**C.A. No. 21-1157**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

STANFORD LANCE WEAVER,

*Plaintiff-Appellant*,

v.

UNITED STATES POSTAL SERVICE,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the District of South Carolina, Aiken Division
D. Ct. No. 1:19-cv-02700-JMC
The Honorable J. Michelle Childs, District Judge

---

## OPENING BRIEF FOR APPELLANT

---

Michelle S. Kallen
    *Court-Appointed Counsel of
    Record*
Jonathan J. Marshall*
JENNER & BLOCK LLP
1099 New York Ave., N.W.,
    Suite 900
Washington, DC 20001
(202) 639-6000
mkallen@jenner.com
jmarshall@jenner.com

* *Admission in the District of Columbia
    pending; practicing under direct
    supervision of members of the D.C. Bar*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION .............................................................................. 1

JURISDICTIONAL STATEMENT ..................................................... 3

STATEMENT OF THE ISSUES ......................................................... 4

STATEMENT OF THE CASE ............................................................ 5

    A.    Factual Background ............................................................ 5

    B.    Procedural History ............................................................ 5

SUMMARY OF ARGUMENT ........................................................... 18

STANDARD OF REVIEW ................................................................. 20

ARGUMENT ...................................................................................... 21

I.    A Remand Is Necessary Because the Proceedings Below Were
Fundamentally Flawed ............................................................. 21

    A.    The District Court Erred in Accepting the Postal Service's
Affirmative Defense at the Rule 12(b)(6) Stage ................ 23

        1.    The Postal Service should not have been permitted to
assert its affirmative defense in a Rule 12(b)(6) motion ......... 25

        2.    The Postal Service should not have been permitted to
submit documentary evidence to defeat amendment of
Mr. Weaver's complaint ......................................... 28

    B.    The District Court Erred in Refusing to Permit Mr. Weaver to
Amend His Complaint ....................................................... 33

    C.    The District Court Erred in Refusing to Consider or Address
Mr. Weaver's Objections to the Magistrate Judge's
Recommendation ............................................................... 36

i

II.     The FMLA's Limitations Period Is Flexible and Begins to Run No
        Earlier than the Date of Termination ............................................................ 38

        A.     The FMLA's Limitations Provision Is Flexible ................................. 38

        B.     *Ricks* Does Not Control This Case .................................................... 41

III.    Mr. Weaver's Suit Is Timely ......................................................................... 45

        A.     The Initial Complaint and Proposed Amended Complaint Both
               State a Claim That Is Not Time Barred .............................................. 45

        B.     Mr. Weaver Can Replead Further to State a Timely Claim ............... 47

CONCLUSION ......................................................................................................... 48

REQUEST FOR ORAL ARGUMENT ................................................................... 49

CERTIFICATE OF COMPLIANCE ....................................................................... 50

# TABLE OF AUTHORITIES

## CASES

*American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212 (4th Cir. 2004) ........................................................ 31

*Andon, LLC v. City of Newport News*, 813 F.3d 510 (4th Cir. 2016) ............... 20

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015) ............ 31

*Barrett v. Illinois Department of Corrections*, 803 F.3d 893 (7th Cir. 2015) .................................................................. 41, 43

*Bing v. Brivo Systems, LLC*, 959 F.3d 605 (4th Cir. 2020) .............................. 33

*Board of Trustees, Sheet Metal Workers' National Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135 (4th Cir. 2019) ......................................... 29

*Briscoe v. W.A. Chester, LLC*, 799 F. App'x 183 (4th Cir. 2020) (per curiam) .......................................................... 25

*Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996) ...................... 25

*Burlington Coat Factory Securities Litigation, In re*, 114 F.3d 1410 (3d Cir. 1997) ........................................................ 31

*Butler v. Owens-Brockway Plastics Products, Inc.*, 199 F.3d 314 (6th Cir. 1999) .................................................... 40

*Carroll v. Yates*, 362 F.3d 984 (7th Cir. 2004) .............................................. 31

*Chesapeake Bay Foundation v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602 (D. Md. 2011) .............................................. 30

*Clatterbuck v. City of Charlottesville*, 708 F.3d 549 (4th Cir. 2013) ............... 36

*Delaware State College v. Ricks*, 449 U.S. 250 (1980) .......................... 2, 10, 19, 37, 41–45

*Dotson v. Pfizer, Inc.*, 558 F.3d 284 (4th Cir. 2009) ........................................ 46

*E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435 (4th Cir. 2011) .......................................................... 25

*Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882 (4th Cir. 2023) ................................................................ 25

*Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam) ............................. 1, 11, 21

*Estelle v. Gamble*, 429 U.S. 97 (1976) ....................................................... 1, 21

iii

*Fudge v. Penthouse International, Ltd.*, 840 F.2d 1012 (1st Cir. 1988) ........... 31

*Galustian v. Peter*, 591 F.3d 724 (4th Cir. 2010) ............................................. 33

*Gilliam v. Allen*, 62 F.4th 829 (4th Cir. 2023)................................................... 35

*Goldfarb v. Mayor of Baltimore*, 791 F.3d 500 (4th Cir. 2015) ................. 23–24

*Goode v. Central Virginia Legal Aid Society, Inc.*, 807 F.3d 619 (4th Cir. 2015)................................................................................................................ 33

*Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007) (en banc) ................. 28

*Greater Baltimore Center for Pregnancy Concerns v. Mayor of Baltimore*, 721 F.3d 264 (4th Cir. 2013) (en banc) ...................................... 24

*Halscott Megaro, P.A. v. McCollum*, 66 F.4th 151 (4th Cir. 2023) ........... 23–24

*Hannah P. v. Coats*, 916 F.3d 327 (4th Cir. 2019)............................................ 45

*Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000) ........................................ 48

*Howard v. City of Durham*, 68 F.4th 934 (4th Cir. 2023) ................................ 35

*Hudson v. Pittsylvania County*, 774 F.3d 231 (4th Cir. 2014) ........................... 4

*International Union of Electrical Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229 (1976) ............................................... 45

*Kerr v. Marshall University Board of Governors*, 824 F.3d 62 (4th Cir. 2016)................................................................................................. 20, 37

*Knibbs v. Momphard*, 30 F.4th 200 (4th Cir.), *cert. denied*, 143 S. Ct. 303 (2022) ..................................................................................................... 35

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .............................. 46

*McLean v. United States*, 556 F.3d 391 (4th Cir. 2009)................................... 16

*Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791 (4th Cir. 1993).......................... 24

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197 (4th Cir. 2019)................................................................................................. 20

*Ott v. Maryland Department of Public Safety & Correctional Services*, 909 F.3d 655 (4th Cir. 2018)........................................................ 48

*Papasan v. Allain*, 478 U.S. 265 (1986) .......................................................... 36

*Philips v. Pitt County Memorial Hospital*, 572 F.3d 176 (4th Cir. 2009) ................................................................................................ 10, 25, 30

*Phillips v. LCI International, Inc.*, 190 F.3d 609 (4th Cir. 1999) .................... 31

*Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021)..................................................... 1

*Porter v. Zook*, 898 F.3d 408 (4th Cir. 2018)...................................................... 20

*Quintero v. Garland*, 998 F.3d 612 (4th Cir. 2021) .......................................... 21

*Reed v. Lear Corp.*, 556 F.3d 674 (8th Cir. 2009)............................................... 41

*Republican Party of North Carolina v. Martin*, 980 F.2d 943 (4th Cir. 1992)............................................................................................................... 23

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (per curiam) .................. 26

*Stevens v. Holler*, 68 F.4th 921 (4th Cir. 2023)................................................. 26

*United States v. Midgette*, 478 F.3d 616 (4th Cir. 2007)................................... 15

*Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296 (4th Cir. 2016)............................................................................................................... 45

*Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977)................................................ 1

*Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801 (E.D. Va. 2007) ............. 30–32

*Waugh Chapel South, LLC v. United Food & Commercial Workers Union Local 27*, 728 F.3d 354 (4th Cir. 2013)....................................... 24, 27

*Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990) .......... 21

*Wellness International Network, Ltd. v. Sharif*, 575 U.S. 665 (2015).............. 37

*Wudi Industrial (Shanghai) Co. v. Wong*, 70 F.4th 183 (4th Cir. 2023) .......... 20

*Young v. City of Mount Ranier*, 238 F.3d 567 (4th Cir. 2001) ........................... 8

*Zak v. Chelsea Therapeutics International, Ltd.*, 780 F.3d 597 (4th Cir. 2015)........................................................................................................... 23–24

**STATUTES**

28 U.S.C. § 636(b)(1)(A)...................................................................................... 37

28 U.S.C. § 636(b)(1)(C)...................................................................................... 37

28 U.S.C. § 1291 .................................................................................................... 4

28 U.S.C. § 1331 .................................................................................................... 3

29 U.S.C. § 255(a) ............................................................................................... 39

29 U.S.C. § 255(b)............................................................................................... 39

29 U.S.C. § 1113(1) ........................................................................ 39

29 U.S.C. § 1303(e)(6)(A)(i) .......................................................... 39

29 U.S.C. § 1303(f)(5)(A)(i) ........................................................... 39

29 U.S.C. § 1370(f)(1)(A) ............................................................... 39

29 U.S.C. § 1451(f)(1) .................................................................... 39

29 U.S.C. § 2005(c)(2) .................................................................... 39

29 U.S.C. § 2615(a) ........................................................................ 40

29 U.S.C. § 2617(c) ........................................................................ 39

29 U.S.C. § 2617(c)(1) ................................... 4, 7, 19, 38, 40, 43

29 U.S.C. § 2617(c)(2) ..................... 2, 4, 7–8, 19, 28, 38, 40, 43

42 U.S.C. § 2000e-5(e) ................................................................... 42

42 U.S.C. § 2000e-5(e)(1) ......................................................... 39, 43

Fair Labor Standards Act of 1938, ch. 676, 52 Stat. 1060 (codified
    as amended at 29 U.S.C. §§ 201–219) ...................................... 6

Family and Medical Leave Act of 1993, Pub. L. No. 103-3, 107 Stat.
    6 (codified as amended at 5 U.S.C. §§ 6381–6387 and 29 U.S.C.
    §§ 2601–2654) ............................................................................... 1

## RULES AND REGULATIONS

Fed. R. App. P. 4(a)(1)(B)(ii) ......................................................... 4

Fed. R. App. P. 4(a)(4)(A)(iv) ........................................................ 4

Fed. R. Civ. P. 10(c) ...................................................................... 25

Fed. R. Civ. P. 12(b)(6) ............................... 2, 4, 6–7, 10, 12, 18, 21,
                                        23–27, 29, 31–32, 37, 45–46

Fed. R. Civ. P. 12(d) ..................................................................... 24

Fed. R. Civ. P. 15(a) ..................................................................... 33

Fed. R. Civ. P. 15(a)(2) ..................................................... 8, 29, 33–34

Fed. R. Civ. P. 56 .................................................................... 24, 35

Fed. R. Civ. P. 59(e) ................................................. 3–4, 16, 18, 35

29 C.F.R. § 825.220(c) ................................................................... 45

**OTHER AUTHORITIES**

*Oxford English Dictionary* (2d ed. 1989).................................................... 38–39

Wright, Charles Alan, et al., *Federal Practice and Procedure* (3d ed. 2017)............................................................................................... 8

Wright, Charles Alan, et al., *Federal Practice and Procedure* (4th ed. 2023 update) ................................................................................. 32

# INTRODUCTION

It is a reality of civil litigation in this country that many plaintiffs are unable to retain counsel to assist with presenting their claims. To that end, it is a fundamental principle that pro se plaintiffs attempting to vindicate their rights on their own are afforded special treatment—their pleadings and filings are to be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see, e.g.*, *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). That principle—that pro se plaintiffs should be treated with special solicitude in their efforts to navigate the justice system—ensures that the law does not just belong to those of means.

That principle was turned on its head in the proceedings below. Plaintiff-Appellant Stanford Lance Weaver, proceeding pro se and *in forma pauperis*, filed a complaint on September 23, 2019, alleging that the United States Postal Service willfully interfered with his rights under the Family and Medical Leave Act of 1993 (FMLA), Pub. L. No. 103-3, 107 Stat. 6 (codified as amended at 5 U.S.C. §§ 6381–6387 and 29 U.S.C. §§ 2601–2654), and willfully retaliated against him for exercising those rights. Though Mr. Weaver's initial complaint did not spell it out, the reason his suit was filed on that date was because the FMLA requires claims for willful violations to be brought "within 3 years of the date of the last event

1

constituting the alleged violation." 29 U.S.C. § 2617(c)(2). And the principal violation Mr. Weaver was challenging was his termination—which occurred on September 23, 2016, exactly three years earlier.

Things went awry, however, because the magistrate judge and district court upended normal procedures to dismiss Mr. Weaver's suit at the pleading stage. The Postal Service was permitted to submit documentation that purported to buttress its timeliness defense—even though the assertion of affirmative defenses at the Rule 12(b)(6) stage is supposed to be limited to what is supported by the face of the complaint, and a defendant may not (with some exceptions not applicable here) support its Rule 12(b)(6) motion to dismiss by presenting evidence outside the pleadings. Then, after the magistrate judge accepted this improper argumentation and evidence and recommended that Mr. Weaver's suit be dismissed with prejudice, the district court declined to consider Mr. Weaver's objections and instead deferred to the magistrate judge's recommendation.

In addition to these procedural errors, the magistrate judge's recommendation that Mr. Weaver's suit be dismissed was also based on a mistake of law. The magistrate judge understood the Supreme Court's decision in *Delaware State College v. Ricks*, 449 U.S. 250 (1980), to stand for the proposition that the limitations period in a termination-related employment suit always begin when the employee is *notified* of the termination—not on the *actual* date of termination. That was error.

*Ricks* commands no such conclusion, and the text of the FMLA commands the opposite. When a plaintiff alleges that his termination was a willful violation of the FMLA, he has three years from the date of the termination to bring suit.

This Court should clarify the applicable law and remand this case for the district court to follow the proper law and the proper procedures. Mr. Weaver should be permitted to amend his complaint and tell his side of the story. And because that story turns on his termination from the Postal Service—an event that occurred on September 23, 2016—this suit is timely.

If the Postal Service wishes to contest either the date of discharge or any of Mr. Weaver's other allegations, it must await the appropriate point of the litigation to do so. That the Postal Service's adversary in this matter was a pro se plaintiff was no reason for circumventing the usual rules. To the contrary: it was reason for adhering to them with special care.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 because the causes of action arise under a federal statute. The district court entered judgment on July 1, 2020, D. Ct. Doc. 52, J.A. 83, and Mr. Weaver timely filed a motion for reconsideration on July 29, 2020, D. Ct. Doc. 54, J.A. 84–86; *see* Fed. R. Civ. P. 59(e). The district court denied the motion for reconsideration on December 11, 2020, D. Ct. Doc. 58, J.A. 109–112, and Mr. Weaver timely filed a notice of appeal

3

on February 9, 2021, D. Ct. Doc. 60, J.A. 113; *see* Fed. R. App. P. 4(a)(1)(B)(ii).[1]

This Court has jurisdiction under 28 U.S.C. § 1291. *See Hudson v. Pittsylvania County*, 774 F.3d 231, 235 n.4 (4th Cir. 2014) (Rule 59(e) motion "tolls the . . . appeal period until the district court disposes of [the] motion" (citing Fed. R. App. P. 4(a)(4)(A)(iv))).

## STATEMENT OF THE ISSUES

Pursuant to this Court's March 28, 2023 order, *see* C.A. Doc. 5, at 1, the issues presented in this appeal are:

1.    Whether the district court erred in denying Mr. Weaver's motion to amend his complaint, instead dismissing with prejudice on timeliness grounds despite the facts that the Postal Service established its timeliness affirmative defense using evidentiary submissions to support a Rule 12(b)(6) motion and that the proposed amended complaint alleged relevant facts within the limitations period.

2.    What constitutes the "last event" triggering the FMLA's statute of limitations, 29 U.S.C. § 2617(c)(1)–(2).

---

[1]  The notice of appeal properly identified both the July 1 judgment and the December 11 order as the targets of review.  J.A. 109.

## STATEMENT OF THE CASE

### A.      Factual Background

Mr. Weaver was an employee of the Postal Service until 2016.  J.A. 36.[2]
Between 2014 and 2016, Mr. Weaver and the Postal Service had a number of
disputes related to Mr. Weaver's entitlement to FMLA leave during his wife's
pregnancy and after the birth of their children.  J.A. 36; J.A. 38–39.  During this
period, the Postal Service denied Mr. Weaver leave to which he was entitled under
the statute, abolished his position in retaliation for taking FMLA leave, and
manipulated his records and hours so as to reduce his entitlement to future FMLA
leave.  J.A. 36; J.A. 38–39.  The dispute culminated with the Postal Service's
termination of Mr. Weaver on September 23, 2016.  J.A. 36.  On the same day, Mr.
Weaver's union notified the Postal Service that it was withdrawing a grievance it
had filed on Mr. Weaver's behalf.  J.A. 50.

### B.      Procedural History

Proceeding pro se and *in forma pauperis*, Mr. Weaver brought an FMLA suit
against the Postal Service.  D. Ct. Doc. 1 (Sept. 23, 2019), J.A. 5–10.  The Postal
Service moved to dismiss on timeliness grounds, submitting evidentiary materials
that it believed supported its affirmative defense.  D. Ct. Doc. 22 (Jan. 13, 2020),

---

[2] This brief factual background adopts facts from Mr. Weaver's proposed
amended complaint, D. Ct. Doc. 38-1 (Apr. 3, 2020), J.A. 33–39.

J.A. 15–18; D. Ct. Docs. 42-1 to -2 (Apr. 16, 2020), J.A. 47–50.  Opposing dismissal,

Mr. Weaver moved to amend the complaint.  D. Ct. Doc. 32 (Feb. 18, 2020), J.A.

30–31; D. Ct. Doc. 38 (Apr. 3, 2020), J.A. 32.  The magistrate judge denied the

motion to amend and recommended that the district court dismiss the suit with

prejudice.  D. Ct. Doc. 44 (May 26, 2020), J.A. 51–56.  The district court refused to

consider Mr. Weaver's objections to the magistrate judge's recommendation and

adopted that recommendation in full.  D. Ct. Doc. 51 (July 1, 2020), J.A. 76–82.  The

district court then denied Mr. Weaver's motion for reconsideration.  D. Ct. Doc. 58

(Dec. 11, 2020), J.A. 109–112.

       1.   a.   On September 23, 2019, Mr. Weaver filed a pro se complaint against

the Postal Service.  J.A. 5–10.  He asserted two counts under the FMLA, one alleging

interference with his protected right to take leave and the other alleging retaliation

for his exercise of FMLA rights.[3]  J.A. 9.  Mr. Weaver sought "[b]ack pay for

termination" and "reinstatement of position."  J.A. 9.

       The Postal Service moved to dismiss the complaint under Federal Rule of

Civil Procedure 12(b)(6), arguing that Mr. Weaver's claims were untimely.  J.A. 15;

*see* D. Ct. Doc. 22, J.A. 15–18.  The Postal Service observed that the latest specific

---

[3] Mr. Weaver also referenced the Fair Labor Standards Act of 1938 (FLSA), ch. 676, 52 Stat. 1060 (codified as amended at 29 U.S.C. §§ 201–219), in his initial pro se complaint, J.A. 7, and his proposed amended complaint, J.A. 35, but the magistrate judge construed his complaint as arising only under the FMLA, J.A. 11. Mr. Weaver is no longer pursuing claims under the FLSA.

date appearing in the pro se complaint was May 2016, and that the FMLA imposes a two- or three-year statute of limitations, depending on whether the plaintiff alleges a willful violation.  J.A. 15–16; *see* 29 U.S.C. § 2617(c)(1)–(2).  The Postal Service therefore argued that Mr. Weaver had, at the latest, until May 2019 to assert his FMLA claims.  J.A. 16.  The Postal Service acknowledged that it was raising an affirmative defense to liability, but nonetheless claimed that Rule 12(b)(6) was the proper vehicle for asserting that defense because the "time bar is apparent on the face of the complaint."  J.A. 16.

Mr. Weaver—still operating pro se—then filed two documents: a motion to amend his complaint, D. Ct. Doc. 31 (Feb. 13, 2020), J.A. 28–29, and a response to the Postal Service's motion to dismiss, D. Ct. Doc. 32, J.A. 30–31.

Mr. Weaver's motion to amend included a section titled "III. Statement of Claim," which expanded in narrative fashion on the details of the alleged FMLA violations.[4]  J.A. 28–29.  Mr. Weaver alleged that the Postal Service "willfully interfered" with his FMLA rights "when on 9/23/2016, [he] was terminated."  J.A. 28.  He further alleged that the Postal Service "retaliated against [him] for requesting and taking FMLA protected leave" by taking a series of actions that "ultimately culminat[ed] in . . . removal . . . on 9/23/2016."  J.A. 29.

---

[4] The District of South Carolina's form civil complaint for pro se plaintiffs includes "III. Statement of Claim" as a header.  J.A. 9; J.A. 36.

In his response to the motion to dismiss, Mr. Weaver acknowledged that the FMLA's general two-year limitations period had run, but he argued that he had properly alleged a willful violation in both his initial complaint and in his motion to amend, and thus the FMLA's three-year limitations period applied.  J.A. 31; *see* 29 U.S.C. § 2617(c)(2).  And Mr. Weaver noted that his claim was timely under the three-year limitations provision because he had "filed his Claim for Relief on 9/23/2019, which is three years after the date of 9/23/2016, the date [on] which the [the Postal Service] terminated [him]."  J.A. 31.

The magistrate judge entered a docket order denying without prejudice Mr. Weaver's motion to amend his complaint.  D. Ct. Doc. 36 (Mar. 20, 2020), J.A. 3. The order noted that Mr. Weaver "appears to seek to add additional facts to his 'Statement of Claim,'" and that if he "is seeking to amend his complaint, [he] must file a proper motion to amend in accordance with Fed. R. Civ. P[.] 15(a)(2) and attach a complete proposed amended complaint."  J.A. 3.  The order also "reminded" Mr. Weaver "that an amended complaint replaces the original complaint and should be complete in itself."  J.A. 3 (citing *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001); and 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1476 (3d ed. 2017)).

b.    Following that order, Mr. Weaver renewed his motion to amend the complaint.  D. Ct. Doc. 38, J.A. 32.  He attached a proposed amended complaint. D. Ct. Doc. 38-1, J.A. 33–39.

The proposed amended pro se complaint outlined eleven ways in which the Postal Service had both "interfered with" Mr. Weaver's FMLA rights, J.A. 36; J.A. 38, and eleven ways in which it had "retaliat[ed]" against him for exercising FMLA rights, J.A. 38–39.  Among them were that the Postal Service had interfered with his FMLA rights by "terminat[ing] [him] on 9/23/2016" for previous exercises of his FMLA rights, J.A. 38; retaliated against him by "terminat[ing] [him] for FMLA leave that was requested in a timely manner . . . on 9/23/2016," J.A. 38; and retaliated against him by "den[ying] [him] an opportunity to work an adjusted schedule or intermittent schedule or provide a 'last chance/firm choice agreement' to avoid [his] termination . . . on 9/23/2016," J.A. 39.  In the proposed amended complaint's request for relief, Mr. Weaver reiterated that he was seeking damages and other relief "as a result of [his] termination of employment . . . on 9/23/2016."  J.A. 36.

The Postal Service opposed Mr. Weaver's motion to amend his complaint, arguing that it "simply reiterate[d] his time-barred claims."  J.A. 40; *see* D. Ct. Doc. 42 (Apr. 16, 2020), J.A. 40–46.  The Postal Service acknowledged that the proposed amended complaint alleged that Mr. Weaver "was terminated on September 23, 2016" and that it "[t]hus . . . appears to allege that [the] termination falls within the

three-year statute of limitations, to the day." J.A. 42. Still, the Postal Service continued to contend that the proposed amended complaint must be dismissed on timeliness grounds under Rule 12(b)(6). *See* J.A. 42–44, 42 n.3.

To support that position, the Postal Service attached a memorandum it had issued in June 2016 purporting to terminate Mr. Weaver's employment as of July 5, 2016. D. Ct. Doc. 42-1, J.A. 47–49; *see* J.A. 42. The Postal Service argued that the court could consider this document in resolving its Rule 12(b)(6) motion because the document was "integral to the complaint." J.A. 42 n.3 (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). And it observed that in *Delaware State College v. Ricks*, 449 U.S. 250 (1980), the Supreme Court had held that "continuity of employment, without more" was not enough to keep the limitations period for a Title VII suit from beginning to run. J.A. 43; *see Ricks*, 449 U.S. at 257.

In its opposition to the motion to amend, the Postal Service recast Mr. Weaver's allegation that he was terminated on September 23, 2016, as a reference to "the date that [his] labor grievance, disputing his termination, was withdrawn." J.A. 43 n.4. But it asserted that this date carried only administrative consequences and was not the date of termination. J.A. 43 n.4. And it believed that *Ricks* had held that the labor-grievance process played no role in calculating the end of the limitations period. J.A. 43–44. "Applying this case law to the present case," the Postal Service concluded, "it is clear that [Mr. Weaver's] termination [*sic*] is time-

barred," and it therefore argued that his motion to amend "should be denied as being futile."  J.A. 44.

2.  The magistrate judge denied Mr. Weaver's motion to amend his complaint and recommended that the suit be dismissed with prejudice.  D. Ct. Doc. 44, J.A. 51–56.

a.  The magistrate judge began by acknowledging that courts must construe pro se filings liberally.  J.A. 52 (citing *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam)).  But she also noted that "the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists."  J.A. 53.

The magistrate judge then explained that there is a split of authority as to when the limitations period for an FMLA suit begins to run, with some courts holding that the period begins when leave is denied and others holding that the period begins "on the date of the defendant's last adverse employment action."  J.A. 53.  But she noted that even under the most plaintiff-friendly view that had been adopted by other courts, Mr. Weaver's suit was untimely (according to the allegations in the *initial* complaint) because "the latest date of discrimination alleged . . . is May 2016, which is more than three years before Weaver filed this action on September 23, 2019."  J.A. 53.

The magistrate judge next observed that Mr. Weaver's proposed amended complaint alleged a termination date of September 23, 2016, which would potentially make his claim timely under some of the authority the magistrate judge had noted. *See* J.A. 54. But she believed that the correct rule was that "[t]he limitations period for an employment discrimination action based on an unlawful termination begins to run from the date that the employer notifies an employee of his termination, even if the termination is pending." J.A. 54. And she concluded as a factual matter—based on the Postal Service's evidentiary submission—that the relevant date was therefore June 3, 2016. J.A. 54.

Explaining her decision to rely on the defendant's evidentiary submissions in resolving a Rule 12(b)(6) motion, the magistrate judge held that "reliance on evidence outside of the pleading is appropriate here because Weaver's new allegation that would arguably make his claims timely was raised only after [the Postal Service] moved to dismiss his claims as untimely, the document is integral to and explicitly relied on in the proposed amended complaint, and Weaver does not challenge the document's authenticity." J.A. 54 n.2. The reason the document was integral, in the magistrate judge's view, was that it "triggered Weaver's right to sue." J.A. 54 n.2. Accordingly, the magistrate judge recommended that the complaint be dismissed with prejudice, J.A. 55, and that the motion to amend be denied "as futile," J.A. 55 n.3.

b. Mr. Weaver timely filed objections to the magistrate judge's recommendation that the complaint be dismissed and challenged her order denying the motion to amend. D. Ct. Doc. 47 (June 9, 2023), J.A. 57–59. Mr. Weaver's filing raised three issues.

*First*, Mr. Weaver challenged the acceptance of the Postal Service's factual submissions in its opposition to his motion to amend—submissions to which he had not responded before the magistrate judge issued her recommendation. He explained that he "was not aware a response could be made in opposition to a defendant's response in opposition to a motion to amend that had yet to be decided by the Court," and he therefore "did not attempt such a response." J.A. 57.

Second, Mr. Weaver argued that the magistrate judge had misconstrued the initial complaint to allege only denials of leave in or before May 2016 and that she had misapplied the FMLA's limitations provision. J.A. 57–59. He noted that, although his amended complaint clarified that he was challenging his termination on September 23, 2016, his initial complaint had noted FMLA violations not only on specified dates but also "'thereafter,'" in an effort to "emphatically state there were subsequent dates . . . , such as Plaintiff's termination on 9/23/2016," on which the Postal Service violated the FMLA. J.A. 58. Mr. Weaver explained that "though [he had] used certain dates and time frames, all which revolved around the [his] wife's pregnancy and subsequent birth in 2014, 2015, and 2016 in his original complaint,

13

and then clarified those dates in his amended complaint, the issue or reason [he] brought this action forward on 9/23/2019, was due to the termination of Plaintiff by Defendant on 9/23/2016, and not individual dates of denial of FMLA leave." J.A. 58. And Mr. Weaver argued that *Ricks* was distinguishable because the notice of termination he received from the Postal Service in June 2016 was not analogous to the event that was held to have begun the limitations period in that case. J.A. 58.

*Third*, Mr. Weaver argued that, even if the magistrate judge had properly construed and applied *Ricks* to deem his suit untimely, the doctrine of equitable tolling should apply. J.A. 59. He noted that if the doctrine applied, the "statute of limitations w[ould] not bar [his] claim." J.A. 59.

c.   In its response to Mr. Weaver's objections, the Postal Service interpreted Mr. Weaver's arguments as a "belie[f] that his limitations period was tolled, because he filed a labor grievance regarding his termination." J.A. 71; *see* D. Ct. Doc. 48 (June 23, 2020), J.A. 70–75. Though Mr. Weaver had emphasized that he was alleging a termination date of September 23, 2016, the Postal Service maintained that the relevant date under *Ricks* was the date he was notified of that termination. J.A. 71.

As to Mr. Weaver's first objection—that he was not afforded an opportunity to respond to the Postal Service's factual allegations and purportedly supporting documentation—the Postal Service claimed that "[t]he objection is irrelevant"

14

because Mr. Weaver's claim "was untimely as matter of law." J.A. 72. As to the second objection, the Postal Service reiterated its view that *Ricks* governed. J.A. 72–73. And as to equitable tolling, the Postal Service asserted that application of the doctrine is "particularly" unusual "when the claim is employment litigation claims against a federal agency." J.A. 74. The Postal Service did not suggest that Mr. Weaver's objections were insufficient to obtain de novo review of the challenged issues or that he had otherwise forfeited his right to object to the magistrate judge's recommendation.

3.    The district court adopted the magistrate judge's report and recommendation and dismissed Mr. Weaver's complaint with prejudice. D. Ct. Doc. 51, J.A. 76–82.

The district court recited the principle that pro se filings are to be "interpreted . . . liberally" and held "to a less stringent standard than those drafted by attorneys." J.A. 79. It nonetheless criticized Mr. Weaver's objections to the magistrate judge's recommendation for being insufficiently "'specific and particularized' [so as] to facilitate review." J.A. 80 (quoting *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007)). It concluded that Mr. Weaver had not "specifically address[ed] the Magistrate Judge's findings concerning the untimeliness of his Complaint" and instead had "present[ed] the same factual allegations that were before the Magistrate Judge and rehashe[d] them." J.A. 81.

The court also criticized Mr. Weaver for "not attach[ing] any documentation to his Amended Complaint establishing his termination date," which the proposed amended complaint alleged to have been September 23, 2016. J.A. 78. Having so framed Mr. Weaver's objections, the district court did not address Mr. Weaver's arguments that he should have been afforded an opportunity to respond to the Postal Service's evidentiary submissions and argument about his termination date, that he had properly alleged a termination date within the limitations period, that the magistrate judge misapplied *Ricks*, and that equitable tolling applied.

The district court further explained that it was dismissing the complaint with prejudice because it was "unable to conceive of any set of facts under which [Mr. Weaver] would be entitled to relief." J.A. 76 n.1 (quoting *McLean v. United States*, 556 F.3d 391, 400 (4th Cir. 2009)). The district court noted that because the claims asserted in Mr. Weaver's initial complaint were "time-barred," the complaint was "incurable." J.A. 76 n.1.

4.    Mr. Weaver then timely moved for reconsideration of the district court's order under Federal Rule of Civil Procedure 59(e). D. Ct. Doc. 54 (July 29, 2020), J.A. 84–86. Mr. Weaver pointed out that the district court had erred in stating that he had failed to address the Postal Service's timeliness argument or "or rebut [its] assertion and documentation that his termination date was July 5, 2016," as he had in fact addressed that issue and argued at length that the magistrate judge's

16

application of *Ricks* was erroneous. J.A. 84 (quoting J.A. 78); *see* J.A. 84–85. Mr. Weaver also emphasized that he had in fact provided a specific objection to the magistrate judge's failure to give him an opportunity to respond to the Postal Service's submissions. J.A. 85. He concluded by explaining that, despite the Postal Service's contention to the contrary, he "was still an employee of the [Postal Service] after July 5, 2016," and that he "still had medical coverage and was accruing leave" beyond that date. J.A. 85–86. Mr. Weaver also noted that he could provide documentation demonstrating those facts. J.A. 86. To wit, he attached a "Notification of Personnel Action" from the Postal Service that, while indicating that July 5, 2016, was Mr. Weaver's "last day in pay status," noted that his "removal" had an effective date of "September 23, 2016." J.A. 87; *see* D. Ct. Doc. 54-1, J.A. 87.[5]

The district court denied the motion for reconsideration, finding that it "contain[ed] contentions that the Magistrate Judge and this court have already properly considered and addressed." J.A. 112; *see* D. Ct. Doc. 58, J.A. 109–112. The court compared the points in the motion with points Mr. Weaver had raised in

---

[5] Mr. Weaver also attached a document from the Postal Service dated October 19, 2016, detailing the effect of his termination on various employment-benefits plans. D. Ct. Doc. 54-2, J.A. 88–94. The portion of that document relating to life insurance noted a termination date of September 23, 2016, J.A. 91, and the health-insurance portion noted an "employee separated effective" date of September 23, 2016, as well, J.A. 93.

earlier filings, but it did not address Mr. Weaver's contention that the court had not

paid proper respect to his objections to the magistrate judge's recommendation. *See*

J.A. 112.   Instead, the court simply concluded that Mr. Weaver's "repetitive

contentions are not appropriately brought under Rule 59(e) because the court has

already properly considered and rejected them."  J.A. 112.

5.    Mr. Weaver timely filed a notice of appeal.  D. Ct. Doc. 60 (Feb. 9, 2021),

J.A. 113.  Still proceeding pro se, he filed an informal opening brief in this Court on

March 8, 2021.  C.A. Doc. 4.  On March 29, 2023, this Court appointed undersigned

counsel to represent Mr. Weaver on appeal.  C.A. Doc. 6.

## SUMMARY OF ARGUMENT

I.    The procedural errors in the district court warrant reversal of the judgment

dismissing Mr. Weaver's complaint.  The complaint should not have been dismissed

because the Postal Service's lone argument for dismissal—a timeliness affirmative

defense—was not clearly established by facts appearing on the face of the complaint.

Nor was it proper for the magistrate judge and the district court to rely on documents

the Postal Service submitted in support of that defense, as none of the exceptions

that sometimes permit a court to consider extrinsic evidence at the Rule 12(b)(6)

stage are applicable here.   And given these principles, there was no reason

whatsoever that Mr. Weaver should not have been permitted to amend his complaint,

even if his initial pro se complaint was deficient.  At the very least, the district court

18

had a duty to consider and address the objections Mr. Weaver submitted in response to the magistrate judge's recommendation that his suit be dismissed with prejudice. The court was not at liberty to disregard those objections and defer completely to the magistrate judge.

II.    In addition to the procedural flaws in the proceedings below, the dismissal of Mr. Weaver's complaint also rested on an erroneous legal conclusion: that the limitations period for his FMLA claims—which center on his termination from the Postal Service in September 2016—began to run months earlier when he was allegedly *notified* of his termination.  The FMLA's limitations provisions use a unique formulation that directs a focus on the "last event constituting the alleged violation."  29 U.S.C. § 2617(c)(1)–(2).  That unusually flexible language cannot support the magistrate judge's conclusion (to which the district court deferred without analysis) that an employee's actual termination is not a relevant "event." And contrary to the view of the magistrate judge (and, by adoption, the district court), *Delaware State College v. Ricks*, 449 U.S. 250 (1980), does not control here. *Ricks* arose under a different statute and involved a challenge to the denial of the plaintiff's tenure, which is why the limitations period began running at the time of the denial and not at the last day of his employment.

III.    Mr. Weaver pleaded timely FMLA claims and his suit should be permitted to proceed.  He alleged that the Postal Service willfully violated the FMLA

19

when it terminated him on September 23, 2016, and he filed suit within three years of that date.  And even if this Court were to conclude that the limitations period began to run before that date—*i.e.*, when Mr. Weaver was first notified of his termination—he should still be permitted to replead.  Given the opportunity, Mr. Weaver can allege an independent FMLA violation on September 23, 2016, and he may be able to allege facts showing that equitable tolling excuses any untimeliness of his suit.

## STANDARD OF REVIEW

The district court's dismissal of Mr. Weaver's complaint for failure to state a claim is reviewed de novo.  *See Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 71 (4th Cir. 2016).  The denial of permission to amend the complaint is reviewed for abuse of discretion.  *See Andon, LLC v. City of Newport News*, 813 F.3d 510, 516 (4th Cir. 2016).  Even on abuse-of-discretion review, a district court is entitled to no deference if it has applied the improper legal standard.  *See Porter v. Zook*, 898 F.3d 408, 429 (4th Cir. 2018).  In other words, "an error of law is by definition an abuse of discretion, and such an error is alone 'grounds for reversal.'"  *Wudi Indus. (Shanghai) Co. v. Wong*, 70 F.4th 183, 190 (4th Cir. 2023) (quoting *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 213 (4th Cir. 2019)).

# ARGUMENT

## I.    A Remand Is Necessary Because the Proceedings Below Were Fundamentally Flawed

This Court has explained that district courts have a special duty to "carefully consider any potentially viable legal claims" a pro se plaintiff might have, even when the plaintiff fails to articulate them himself, so long as it is conceivable that "the factual allegations in the complaint could support those claims." *Quintero v. Garland*, 998 F.3d 612, 634 (4th Cir. 2021). That follows from the Supreme Court's clear instruction that "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In that way, pro se litigants are afforded "special judicial solicitude." *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390 (4th Cir. 1990) (internal quotation marks omitted).

Not only was Mr. Weaver not afforded this "special judicial solicitude" in the proceedings below, the magistrate judge and the district court treated Mr. Weaver's filings with a scrutiny that would be inappropriate even in a counseled case. If anything, it was the *Postal Service* that received special solicitude. The magistrate judge and the district court permitted the Postal Service to raise an affirmative defense in a Rule 12(b)(6) motion to dismiss—indeed, that was the *only* issue raised

21

in the Postal Service's motion—despite the fact that the face of the complaint did not itself support the defense.  The Postal Service was additionally permitted to submit, in support of its assertion of that defense, external documents that were neither mentioned nor relied upon in the complaint.  Then, when Mr. Weaver attempted to amend his complaint to clarify why the Postal Service's timeliness defense was inapplicable, the magistrate judge and the district court assumed the truth of the Postal Service's version of events, disregarded Mr. Weaver's allegations to the contrary, and denied Mr. Weaver any opportunity to replead.

Mr. Weaver properly filed objections to the magistrate judge's recommendation that his suit be dismissed with prejudice.  The district court utterly ignored those objections and instead disregarded them as insufficiently "specific." J.A. 81.  This would have been an erroneous conclusion even had the objections been filed by able counsel—the objections clearly laid out the substantive errors in the magistrate judge's legal analysis and the procedural error in placing a summary-judgment-like burden of proof on Mr. Weaver at the pleading stage.  When considering that those objections were filed by a pro se plaintiff, the district court's out-of-hand refusal to entertain them is all the more indefensible.

What is more, the district court had the opportunity to correct its oversight when Mr. Weaver moved for reconsideration.  Mr. Weaver's motion pointed out that he had challenged the core aspects of the magistrate judge's reasoning and that de

novo review was therefore required.  And, though he had absolutely no obligation to do so, Mr. Weaver even attached *documentation* demonstrating that he was, indeed, terminated on the date that he alleged he was terminated—not on the date the Postal Service claimed.  This motion, too, was rejected by the district court out of hand.

In short, Mr. Weaver did not get a fair shake in the district court.  He should be given a fresh opportunity to assert his claims on proper footing.

### A.    The District Court Erred in Accepting the Postal Service's Affirmative Defense at the Rule 12(b)(6) Stage

It is black letter that a court's review on a Rule 12(b)(6) motion to dismiss "is limited to the well-pled facts in the complaint viewed in the light most favorable to the plaintiff."  *Halscott Megaro, P.A. v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023); *see, e.g.*, *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015).  Such a motion "tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Halscott Megaro*, 66 F.4th at 157 (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)); *see Goldfarb v. Mayor of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015) ("While no absolute bar exists, a motion to dismiss under Rule 12(b)(6) does not typically resolve the applicability of defenses to a well-pled claim.").

Accordingly, it is rare for a court to "rely on extrinsic materials to determine a motion to dismiss without converting the proceeding into a motion for summary judgment." *Goldfarb*, 791 F.3d at 508; *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 360 (4th Cir. 2013) (material "appended as part of the 'Rule 12(b)(6) motion to dismiss . . . is not a pleading'" (quoting *Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791, 795 (4th Cir. 1993))). When such a conversion occurs, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). In particular, they must "first 'be afforded a reasonable opportunity for discovery.'" *Greater Balt. Ctr. for Pregnancy Concerns v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (en banc); *see Halscott Megaro*, 66 F.4th at 157 ("[I]t is not appropriate for the court to convert a motion to dismiss into a motion for summary judgment 'when the parties have not had an opportunity to conduct reasonable discovery.'" (quoting *Zak*, 780 F.3d at 606)).

As this Court has explained, there is a small universe of evidentiary materials that a court may consider when resolving a Rule 12(b)(6) motion. For instance, a court "may properly take judicial notice of matters of public record." *Halscott Megaro*, 66 F.4th at 157. A court may also consider "documents attached or

24

incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011); *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). And it may consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

The proceedings below did not comport with these principles. The district court dismissed Mr. Weaver's initial complaint on the basis that it was untimely, accepting the Postal Service's assertion of a statute-of-limitations defense in its Rule 12(b)(6) motion. It then refused to allow Mr. Weaver to amend his complaint on the basis of a document submitted by the Postal Service that purported to contradict Mr. Weaver's allegations. Both those steps were reversible error.

    1.    *The Postal Service should not have been permitted to assert its affirmative defense in a Rule 12(b)(6) motion*

As noted above, it is unusual to resolve affirmative defenses at the Rule 12(b)(6) stage. "Claims may be dismissed at the Rule 12(b)(6) stage based upon an affirmative defense, such as the statute of limitations in this case, where the relevant facts 'clearly appear on the face of the complaint.'" *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023) (quoting *Briscoe v. W.A. Chester, LLC*, 799 F. App'x 183, 183 (4th Cir. 2020) (per curiam)); *see Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (dismissal under Rule 12(b)(6) may

be appropriate "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense").[6]

Mr. Weaver's initial complaint asserted two claims. Mr. Weaver alleged an FMLA interference claim that referenced the denial of "FMLA protected leave during [his] wife's pregnancy in 2014–2015" and a similar denial after the "birth of [his] son in 3/2015 and thereafter." J.A. 9. The reference to "thereafter" suggested an open-ended timeframe, and thus the district court should have refused to accept the Postal Service's assertion of a timeliness defense at the motion to dismiss stage. True, the following sentence referenced a timeframe of "9/14–3/15" with respect to the FMLA violation related to Mr. Weaver's wife's pregnancy, and it referenced a timeframe of "3/15–5/16" with respect to the FMLA violation related to Mr. Weaver's son. J.A. 9. So while it may have been a *possible* reading of the complaint that *nothing* of relevance happened after May 2016, that was not the *only* reading. Inferences are never supposed to be drawn against the plaintiff in reading a complaint, *see, e.g.*, *Stevens v. Holler*, 68 F.4th 921, 930 (4th Cir. 2023), and that inference certainly should not have been drawn against the pro se plaintiff here.

---

[6] The form *Roseboro* order explaining the concept of a motion to dismiss for pro se plaintiffs does not clarify that the district court may grant the motion based on affirmative defenses asserted by the defendant. *See* J.A. 19–20 (describing a Rule 12(b)(6) motion to dismiss as one "argu[ing] that the law does not provide a right to relief for claims that a plaintiff makes in his complaint"); *see also Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (per curiam).

But even if the district court were correct to conclude that it was absolutely clear that Mr. Weaver's FMLA interference claim—at least as alleged in the initial complaint—was untimely, it erred in reaching a similar conclusion with respect to Mr. Weaver's FMLA *retaliation* claim. As to that claim, the complaint alleged "[r]etaliation for FMLA leave in 2015." J.A. 9. Though a strained interpretation of this allegation might be that the retaliation *occurred* in 2015, that is far from the most natural interpretation, which is instead that Mr. Weaver took FMLA leave in 2015 and that the Postal Service subsequently—at some unstated date—retaliated against him for taking that leave. The complaint does not allege when that retaliation occurred (though, as detailed further in the proposed amended complaint, that retaliation occurred on September 23, 2016, the true date of Mr. Weaver's termination from the Postal Service). Nothing in the complaint suggests that Mr. Weaver's retaliation claim was untimely, and it was wrong for the district court to dismiss it on that ground under Rule 12(b)(6). *See Waugh Chapel*, 728 F.3d at 360 (Rule 12(b)(6) is a procedure that tests only the sufficiency of a complaint and 'cannot reach the merits of an affirmative defense'" unless "'all facts necessary to the affirmative defense clearly appear *on the face of the complaint*'" (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc))). To do so against a pro se plaintiff was all the more erroneous.

27

2.    *The Postal Service should not have been permitted to submit documentary evidence to defeat amendment of Mr. Weaver's complaint*

Following the Postal Service's challenge to Mr. Weaver's initial complaint on timeliness grounds, Mr. Weaver sought to amend his complaint—first through an informal filing updating his allegations, J.A. 28–29, then by attaching a proposed amended complaint to a motion to amend, J.A. 33–39.  Mr. Weaver made clear that he was alleging, both with respect to his FMLA interference claim and his FMLA retaliation claim, that he was terminated on September 23, 2016, and that the respective FMLA violations were willful.  J.A. 36; J.A. 38–39.  Accordingly, as amended, his claims would have been timely.  *See* 29 U.S.C. § 2617(c)(2).

The Postal Service convinced the magistrate judge and the district court not to permit Mr. Weaver to amend by arguing that even as amended, Mr. Weaver's claims would be untimely.  The Postal Service supported that contention by submitting a document from June 2016 that notified Mr. Weaver of his pending termination and listed a date in July 2016 as the effective date of that termination.  J.A. 42–44; *see* J.A. 47–48.  Both the magistrate judge and the district court relied on the Postal Service's evidentiary submission—indeed, they both treated that document as essentially conclusive on the factual question as to when Mr. Weaver was terminated from his employment with the Postal Service (and when he was notified of that termination).

Consideration of this extrinsic evidence was inappropriate. The district court did not explain at all why it was proper to consider that document. *See* J.A. 80–81. For her part, the magistrate judge found that she could consider the document because Mr. Weaver's "allegation that would arguably make his claims timely was raised only after [the Postal Service] moved to dismiss his claims as untimely"; because "the document is integral to and explicitly relied on in the proposed amended complaint"; and because Mr. Weaver did not "challenge the document's authenticity." J.A. 54 n.2. As an explanation of *why* the document was "integral to . . . the proposed amended complaint," the magistrate judge stated that it was because "the notice of termination triggered Weaver's right to sue." J.A. 54 n.2.[7]

This analysis was wrong on the law and wrong on the facts. For starters, the *timing* of Mr. Weaver's allegations about the date of his termination was irrelevant. Mr. Weaver had *no obligation at all* to allege facts showing that his claims were timely, for "[p]laintiffs are not ordinarily required to plead allegations relevant to potential affirmative defenses to an asserted claim." *Bd. of Trs., Sheet Metal*

---

[7] Presumably the standard for considering extrinsic evidence in determining whether to grant a motion to amend filed in response to a Rule 12(b)(6) motion to dismiss is similar for considering extrinsic evidence in resolving the Rule 12(b)(6) motion itself. There is no logical reason for a stricter standard that would exclude evidence that would be permissibly considered on a subsequent Rule 12(b)(6) motion; nor is there any reason for a laxer standard given Federal Rule of Civil Procedure 15(a)(2)'s direction that a court "should freely give leave [to amend] when justice so requires."

*Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 152 (4th Cir. 2019). The magistrate judge, however, disregarded this basic principle.

Further, Mr. Weaver did not "explicitly rel[y]," J.A. 54 n.2, on the notice of termination. Nowhere in the proposed amended complaint did Mr. Weaver even *mention* the June 2016 notification letter, let alone rely on the document. Instead, Mr. Weaver alleged that he was terminated by the Postal Service in September 2016. J.A. 36. It is difficult to understand how the proposed amended complaint could "explicitly rel[y]" on a document that it did not mention and that, if it means what the Postal Service says it means, contradicted the proposed amended complaint's allegations.

In any event, the June 2016 notification letter is certainly not "integral to the complaint." *Philips*, 572 F.3d at 180. "An integral document is a document that by its 'very existence, and *not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).[8] So, for instance, when a plaintiff brings a fraud claim based on misrepresentations made in a document, the document

---

[8] The magistrate judge quoted this precise language in stating the standard for what constitutes an "integral" document, J.A. 54 n.2, but made no effort to apply that standard.

containing the alleged misrepresentations is integral to the complaint. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233–34 (4th Cir. 2004). Likewise, "a newspaper article reporting allegedly fraudulent statements by a corporate officer may be considered part of the complaint in a securities fraud action, and an allegedly libelous magazine article referred to in a complaint may be considered part of the complaint in a libel action based on that article." *Walker*, 517 F. Supp. 2d at 806 (citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 611–13, 618 (4th Cir. 1999); and *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1014–15 (1st Cir. 1988)). This integral-document exception is narrow and rests on the notion that where the plaintiff has himself "relied upon the[] document[] in framing the complaint," any unfairness to the plaintiff "is dissipated." *Am. Chiropractic*, 367 F.3d at 234 (some internal quotation marks omitted) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.)); *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015); *cf. Carroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004) (rejecting the "fantastic argument" that "*all* facts contained in *any* attachments to a complaint" may be considered as true for purposes of a Rule 12(b)(6) motion).

The June 2016 notification letter "does not fit within this principle; it is not 'central' to [Mr. Weaver's] case in the legally relevant manner because its existence did not create the legal rights asserted," and "[a]t most, it provided [him] with some

notice of a possible right of action." *Walker*, 517 F. Supp. 2d at 806; *see* 5A Charles Alan Wright et al., *Federal Practice and Procedure* § 1327 (4th ed. 2023 update). It was the *termination* of Mr. Weaver itself (among other things) that gave rise to his FMLA claims, not the *notice* of termination that the Postal Service sent him.

In explaining why the June 2016 notification letter was integral, the magistrate judge observed that it "triggered" Mr. Weaver's "right to sue." J.A. 54 n.2. But that is not the test for what constitutes an integral piece of extrinsic evidence that may be considered at the defendant's behest in support of a Rule 12(b)(6) motion. Indeed, if a document that "trigger[s]" a "right to sue" could be considered when attached to a Rule 12(b)(6) motion, there would be little left of the extrinsic-evidence bar in employment-termination cases. Suppose, in a Title VII case, the plaintiff alleged that he was fired on the basis of his religion. On the magistrate judge's view below, the defendant could defeat the key allegation of discriminatory purpose—and thus defeat the suit—by attaching to its Rule 12(b)(6) motion a notification of termination that asserts some other reason for the plaintiff's termination. That is not the law.

In short, the district court relied on a document that should not have been considered to support a defense that was asserted prematurely. Its judgment must be reversed.

**B.    The District Court Erred in Refusing to Permit Mr. Weaver to Amend His Complaint**

That the district court relied on materials it should not have considered to accept a defense it should not have entertained is enough to require reversal of its judgment.  But even if the Postal Service was permitted to assert its timeliness defense and the June 2016 notification letter was fair game, the district court *still* should have permitted Mr. Weaver to amend his complaint.

The standard for permitting amendment is extraordinarily lax.  Indeed, "[i]t is this Circuit's policy to *liberally allow amendment* in keeping with the spirit of Federal Rule of Civil Procedure 15(a)."  *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) (emphasis added).  For instance, in *Goode v. Central Virginia Legal Aid Society, Inc.*, 807 F.3d 619 (4th Cir. 2015), *abrogated in other part by Bing v. Brivo Sys., LLC*, 959 F.3d 605 (4th Cir. 2020), this Court rejected the appellant's argument that the Court had jurisdiction despite a dismissal without prejudice.  *See id.* at 628–30.  In rejecting that argument, the Court noted that the appellant had "never attempted to amend his complaint and never sought leave to do so," and it explained that "[h]ad he sought leave to amend, the district court *surely would have granted this motion*, given the liberal standard that governs a request to amend a complaint under Federal Rule of Civil Procedure 15(a)(2)."  *Id.* at 628 (emphasis added).

The liberal policy toward amendment is a general one—it applies even when a sophisticated party is assisted by able counsel and has already amended, perhaps

multiple times.  Here, things should have been easy: the district court was faced with a pro se plaintiff who had not yet amended at all.  The district court's stingy view on amendment in this case surely did not comply with either the spirit or the letter of Rule 15(a)(2).

The magistrate judge and the district court offered a single justification for their position that Mr. Weaver should not be permitted to amend his complaint even once: that amendment would be "futile" given the June 2016 termination letter, which purportedly proved that Mr. Weaver was terminated in July 2016 and thus any claim filed after July 2019 was untimely.[9]  J.A. 55 n.3; *see* J.A. 76 n.1.  As will be discussed shortly, that view rested on an incorrect interpretation of the FMLA's limitations provision—that the statute of limitations can begin running no later than the plaintiff's termination.  But even if that were true, it was error to treat the Postal Service's submitted evidence as conclusive of Mr. Weaver's true termination date.

The June 2016 notification letter did suggest, as the magistrate judge observed, that Mr. Weaver's employment with the Postal Service would come to an end on July 5, 2016.  J.A. 54.  But Mr. Weaver submitted documents of his own showing that this was not true—that his actual termination date was September 23,

---

[9]  Neither the magistrate judge nor the district court concluded that the initial complaint failed to allege a willful violation, that the proposed amended complaint failed to do so, or that any further amendment was futile on that score because Mr. Weaver *could not* allege a willful violation.

2016.[10]   These dueling documents created a genuine dispute of a material fact—

indeed, *the* material fact.   Even at the summary-judgment stage, Mr. Weaver's

submission would have been sufficient to overcome the Postal Service's opposing

submission and entitled him to reach the jury.   *See Howard v. City of Durham*, 68

F.4th 934, 949 (4th Cir. 2023) ("Rule 56 demands that we 'avoid simply accepting

[a defendant's] self-serving statements and . . . consider *all* contradictory evidence.'"

(second alteration in original) (quoting *Knibbs v. Momphard*, 30 F.4th 200, 216 (4th

Cir.), *cert. denied*, 143 S. Ct. 303 (2022))).   But here, at the *pleading stage*, the

district court considered the Postal Service's evidence as conclusive without even

considering Mr. Weaver's evidence.   And it did so notwithstanding that Mr.

Weaver's submission *postdated* the Postal Service's and thus could have accounted

for developments after the initial notification letter.   *Compare* J.A. 47 (notification

letter, dated June 3, 2016, indicated a removal date of July 5, 2016), *with* J.A. 87

(notification of personnel action, dated October 19, 2016, listed September 23, 2016,

as the effective date of removal and July 5, 2016, as the "last day in pay status"),

---

[10]   Mr. Weaver submitted these documents with his motion for
reconsideration; that, however, was no excuse for ignoring them.   By demonstrating
that the district court had relied upon materials that not only contradicted the
allegations in the proposed amended complaint but also were apparently *wrong*, Mr.
Weaver's submissions constituted "new evidence" as well as proof of a "clear error
of law that must be corrected to prevent manifest injustice," thus warranting Rule
59(e) relief.   *Gilliam v. Allen*, 62 F.4th 829, 848 (4th Cir. 2023) (internal quotation
marks omitted).

*and* J.A. 93 (notice of change in health-benefits enrollment, dated October 19, 2016,
listed September 23, 2016, as the "effective" date of "employee separat[ion]"
(capitalization altered)).

That error cannot be overlooked.  Even when considering extrinsic material
submitted by the defendant, courts must continue to view that material "in the light
most favorable to the plaintiff along with the well-pleaded allegations of the
complaint." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013)
(citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986)).  Given the proposed amended
complaint's allegation that Mr. Weaver was terminated on September 23, 2016—
and his documentation backing up that allegation—there was no basis for denying
him the opportunity to amend just because the Postal Service had submitted an
earlier-dated document showing otherwise.

### C.    The District Court Erred in Refusing to Consider or Address Mr. Weaver's Objections to the Magistrate Judge's Recommendation

The district court committed further error by failing to acknowledge or
address Mr. Weaver's objections.  After the magistrate judge denied Mr. Weaver's
motion to amend and recommended that his complaint be dismissed with prejudice,
Mr. Weaver raised three objections.  The first challenged the magistrate judge's
reliance on the Postal Service's assertion that Mr. Weaver was terminated in July
2016 without giving Mr. Weaver an opportunity to respond.  J.A. 57.  The second
challenged, at some length, the magistrate judge's interpretation and application of

36

*Delaware State College v. Ricks*, 449 U.S. 250 (1980).  J.A. 57–59.  And the third asserted that equitable tolling should excuse any untimeliness.  J.A. 59.  The district court did not address any of these objections, instead stating that Mr. Weaver "has not presented the court with an objection for purposes of reviewing the Magistrate Judge's Report because he does not sufficiently challenge the untimeliness of his Complaint."  J.A. 81.

For the reasons given above and more to follow, the magistrate judge's analysis and recommendations were fundamentally flawed both as a procedural and substantive matter.  But even if the magistrate judge's analysis were sound, Mr. Weaver never consented to have case-dispositive motions adjudicated by the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(A) (magistrate judges lack power, absent consent of the parties, to dismiss under Rule 12(b)(6)); *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 72 (4th Cir. 2016) (citing 28 U.S.C. § 636(b)(1)(C)).  So when Mr. Weaver raised timely objections to the magistrate judge's recommendation, the district court was *required by statute* to undertake a de novo review of the challenged issues and make an independent ruling.  The district court was not at liberty to do what it did here: to set aside Mr. Weaver's objections and cursorily adopt the magistrate judge's analysis.  The court's failure to perform its duty was a violation of Article III's vesting of the judicial power in district judges, not magistrate judges.  *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 675–

78 (2015) (explaining that adjudication of rights outside of Article III courts is consistent with separation of powers only "so long as Article III courts retain supervisory authority over the process"). This failure, too, necessitates vacatur of the judgment below.

## II.    The FMLA's Limitations Period Is Flexible and Begins to Run No Earlier than the Date of Termination

The FMLA's limitations provision requires suits to be brought "not later than 2 years after the date of the last event constituting the alleged violation." 29 U.S.C. § 2617(c)(1). In the case of an "action brought for a willful violation," the period is extended to "3 years [from] the date of the last event constituting the alleged violation." *Id.* § 2617(c)(2). That language sets out a flexible rule—the beginning of the limitations provision, rather than turning in every case on the same triggering act by the employer, will depend on the nature of the alleged violation. And when a plaintiff alleges that his termination constituted a violation of the FMLA, the limitations period begins to run no earlier than the date of termination.

### A.    The FMLA's Limitations Provision Is Flexible

1. The trigger for the FMLA's limitations period is the "last event constituting the alleged violation." 29 U.S.C. § 2617(c)(1)–(2). To "constitute" is "[t]o make up, form, compose; to be the elements or material of which the thing spoken of consists." *Constitute*, *Oxford English Dictionary* (2d ed. 1989) (def. 8). And an "event" is "[s]omething that happens or takes place, esp[ecially] something

38

significant or noteworthy; an incident, an occurrence." *Event*, *Oxford English Dictionary*, *supra* (def. II.3.a). Thus, the limitations period for an FMLA violation begins with the last occurrence that is a significant aspect of the basis for the plaintiff's claim.

The phrase "last event" is an unusual phrase for a limitations provision; in fact, the phrase "last event" appears *nowhere else in the entire U.S. Code* aside from Section 2617(c). Often, limitations provisions in federal statutes refer to some period of time "after the cause of action accrued," *e.g.*, 29 U.S.C. § 255(a)–(b), or "after the date on which the cause of action arose," *e.g.*, *id.* §§ 1303(e)(6)(A)(i), (f)(5)(A)(i), 1370(f)(1)(A), 1451(f)(1). Even provisions using the same "constituted" language as the FMLA refer to the "date of the last *action* which constituted a part of the breach or violation," *e.g.*, *id.* § 1113(1), rather than the last *event* constituting the violation. Other employment-related statutes refer explicitly to an act by the employer; for instance, Title VII's limitations provision refers to a period "after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e-5(e)(1). And still other limitations provision refer more narrowly to the period "after the date of *the* alleged violation," *e.g.*, 29 U.S.C. § 2005(c)(2) (emphasis added).

By eschewing those typical formulations and using a unique phrasing, the FMLA's limitations provision evinces an unusual flexibility. There may be many

"event[s]" that "constitut[e]" the alleged violation, and the FMLA does not require that employees bring suit within two (or three) years after the *first* such event, even if the cause of action might have been complete. Rather, the clock begins to run with the last event that plays a significant role in the employer's violation.

2.    Under a proper interpretation of the FMLA's limitations provision, two things are apparent.

*First*, when an employee is terminated and a dispute over FMLA leave plays a significant role in that termination, the actual termination will generally restart the statute of limitations. In particular, when an employee is notified on Date *X* that he is going to be terminated on Date *Y* due to taking purportedly unauthorized leave that the employee believes was protected by the FMLA, the limitations period starts anew on Date *Y*, as the *actual* termination is undoubtedly an "event constituting" the violation. 29 U.S.C. § 2617(c)(1)–(2). After all, if the employer's decision to terminate the employee constituted interference with FMLA rights or retaliation for exercising FMLA rights, *see id.* § 2615(a), it is hard to see how the actual firing was any less an "event constituting" the interference or retaliation. Nowhere in the FMLA's text is there any suggestion that the fact the employee *could have* sued after being notified of the termination is relevant for purposes of the limitations period. *Accord Butler v. Owens-Brockway Plastics Prods., Inc.*, 199 F.3d 314, 316–17 (6th Cir. 1999) (holding that for purposes of the FMLA's limitations provision, "the last

40

adverse action against [the plaintiff] was her termination" even though allegedly improperly categorized leave occurred prior to that date).[11]

*Second*, in some cases the statute of limitations might begin *after* an employee's termination. Suppose, for instance, that after an employee is fired, his former employer interferes with a subsequent job prospect by notifying the prospective employer that the employee uses excessive FMLA leave time. The plaintiff would have two (or three) years from that final event to bring suit—he would not be out of luck simply because the interference occurs more than three years after he was fired.

### B. *Ricks* Does Not Control This Case

The magistrate judge and district court believed that the June 2016 notification letter triggered the FMLA's statute of limitations, relying on *Ricks*, 449 U.S. 250. *Ricks* involved a Title VII claim brought by a college professor who alleged that he was denied tenure because of his national origin. *Id.* at 252. In June 1974, Ricks was "officially notified" of the decision to deny him tenure, but he was offered a

---

[11] Other courts of appeals have concluded that when a plaintiff's claim turns on whether he should have been granted FMLA leave that the employer denied, it is the denial of leave, rather than the later termination, that begins the limitations period. *See Barrett v. Ill. Dep't of Corr.*, 803 F.3d 893, 897 (7th Cir. 2015); *Reed v. Lear Corp.*, 556 F.3d 674, 681 (8th Cir. 2009). For the reasons given above, that view is erroneous. But it is also irrelevant here, as Mr. Weaver is not challenging the denial of leave but rather his termination, which he alleges to be an act of interference with, and an act of retaliation for exercising, his rights under the FMLA. J.A. 9; J.A. 36; J.A. 38–39.

one-year "'terminal' contract" under which he would continue in the college's employ through June 1975—pursuant to the college's standard "policy of not discharging immediately a junior faculty member who does not receive tenure" and instead "offer[ing] a 'terminal' contract to teach one additional year." *Id.* at 253. The "only unlawful employment practice alleged was the College's decision to deny Ricks' tenure." *Id.* at 254–55.

Because Title VII's limitations provision requires a complaint to be filed with the Equal Employment Opportunity Commission "'within one hundred and eighty days after the alleged unlawful employment practice occurred,'" the Supreme Court had to "identify precisely the 'unlawful employment practice' of which [Ricks] complain[ed]." *Ricks*, 449 U.S. at 256–57 (quoting 42 U.S.C. § 2000e-5(e)). And looking at the *specific allegations in Ricks's complaint*, the Court concluded that the limitations period began to run when Ricks was notified that he had been denied tenure in June 1974, not when his employment was ultimately terminated in June 1975. *Id.* at 257. Not only had Ricks failed to allege that the termination of his employment (pursuant to the post-tenure-denial one-year contract) was discriminatory, "[t]he contrary [wa]s true"—"[i]t appear[ed] that termination of employment at Delaware State is a delayed, but inevitable, consequence of the denial of tenure." *Id.* at 257–58; *see id.* at 258 ("[T]he only alleged discrimination

occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to Ricks.").

*Ricks* is not controlling here. For starters, analogizing from Title VII to the FMLA is questionable given the different purposes of the two statutes—the former, an antidiscrimination law; the latter, a labor law. *See Barrett v. Ill. Dep't of Corr.*, 803 F.3d 893, 897 (7th Cir. 2015) (expressing "skeptic[ism]" of the analogy). And more importantly, as discussed above, the FMLA's limitations provision is worded differently than Title VII's—whereas Title VII focuses narrowly on the specific "alleged unlawful employment practice," 42 U.S.C. § 2000e-5(e)(1), the FMLA focuses more broadly on any "event constituting the alleged violation," 29 U.S.C. § 2617(c)(1)–(2). Indeed, *Ricks* did not adopt a bright-line rule that the notification of termination always starts the limitations period. Instead, it focused carefully on the allegations in the complaint and compared those allegations to the terms of the relevant statute's limitations period.[12]

In the district court, the Postal Service relied on *Ricks* for two propositions. First, it noted that under *Ricks*, "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination."

---

[12] Indeed, Ricks was never terminated at all in the sense of being *fired* from his position, as Mr. Weaver was. He was simply denied tenure and then left his employment at the expiration of his subsequent one-year contract. *See Ricks*, 449 U.S. at 252–54.

43

J.A. 43 (quoting 449 U.S. at 257).  That is true as far as it goes: *Ricks* is inconsistent with the broad proposition that a plaintiff's continued employment with an employer automatically tolls the limitations period for all causes of action that may have arisen during his employment.  But Mr. Weaver does not rely upon such a broad principle. His claim is that, *under the circumstances here*, the Postal Service violated the FMLA on September 23, 2016, the date on which his employment was officially terminated.

The Postal Service also argued that *Ricks* stands for the proposition that a union labor-grievance process does not toll a statute of limitations.  J.A. 43–44.  Mr. Weaver does not rely on that proposition, either, as the deeper significance of September 23, 2016, is that it was the day on which he was officially fired by the Postal Service.  But in any event, *Ricks* does not establish this principle as a general matter.  True, *Ricks* held, on the facts of that case, that the limitations period began to run prior to the denial of the grievance because "entertaining a grievance complaining of the tenure decision d[id] not suggest that the earlier decision was in any respect tentative."  449 U.S. at 261.  While that may have been true in *Ricks*, a Title VII case, based on the particular relationship between the college's employment decision and the applicable grievance process, there are no facts in the record here that permit a similar conclusion—especially not in a case arising under

the FMLA, whose limitations rules operate differently in the manner and for the reasons discussed.[13]

## III.   Mr. Weaver's Suit Is Timely

### A.   The Initial Complaint and Proposed Amended Complaint Both State a Claim That Is Not Time Barred

Applying the proper understanding of the FMLA's limitations provisions, the proper respect for pro se filings, and the proper procedural framework for the assertion of affirmative defenses and presentation of extrinsic evidence at the Rule 12(b)(6) stage, Mr. Weaver has—twice—pleaded a timely FMLA claim, or at least an FMLA claim that cannot be dismissed on timeliness grounds on a Rule 12(b)(6) motion.

First, Mr. Weaver's initial complaint pleaded a timely FMLA retaliation claim.[14] He alleged that he was unlawfully denied FMLA leave between 2014 and

---

[13] Further underscoring the Title-VII-specific nature of *Ricks*'s holding is its observation that the Court had already "held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods" in *International Union of Electrical Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229 (1976), another Title VII case. *Ricks*, 450 U.S. at 261; *see Robbins & Myers*, 429 U.S. at 231.

[14] It is well established that a plaintiff can state a claim under the FMLA for retaliation. *See* 29 C.F.R. § 825.220(c) ("The Act's prohibition against interference prohibits an employer from discriminating *or retaliating* against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." (emphasis added)); *see also, e.g.*, *Hannah P. v. Coats*, 916 F.3d 327, 347 (4th Cir. 2019) ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions." (quoting 29 C.F.R. § 825.220(c))); *Vannoy v. Fed. Rsrv. Bank*

2016 and was later terminated (at some unspecified date). J.A. 9. He alleged that the Postal Service retaliated against him for exercising FMLA rights—the inference being that the key act of retaliation was his termination. It does not appear on the face of the complaint that Mr. Weaver's retaliation claim is untimely, and therefore at least that aspect of the complaint should have been permitted to go forward.

In any event, Mr. Weaver's proposed amended complaint clearly alleged a course of conduct by the Postal Service to both interfere with his FMLA rights and retaliate against him for exercising and attempting to exercise those rights. J.A. 36; J.A. 38–39. That course of conduct concluded with Mr. Weaver's termination, which he alleges occurred on September 23, 2016. J.A. 36. At the pleading stage, the allegations of willful interference and willful retaliation as well as the allegation about Mr. Weaver's termination date must be accepted as true. The Postal Service believes that the relevant date is in June 2016. But the factual support for that contention may not be considered at the Rule 12(b)(6) stage, and even if it could be, that date is simply the *notification* date for Mr. Weaver's termination. For the

---

*of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016) (explaining that the FMLA "provides proscriptive rights 'that protect employees from discrimination *or retaliation* for exercising their substantive rights under the FMLA'" and that "FMLA retaliation claims may rest on circumstantial evidence evaluated under the burden-shifting framework" of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (emphasis added) (quoting *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 294 (4th Cir. 2009))).

reasons given, neither the FMLA's text nor precedent support the conclusion that it is the notification date, rather than the termination date, that matters.

### B.     Mr. Weaver Can Replead Further to State a Timely Claim

Even putting aside every argument made to this point, there are two final reasons that Mr. Weaver should be permitted to amend his complaint. If given the opportunity to replead once more, Mr. Weaver could add allegations that would show an additional willful FMLA violation on September 23, 2016—undoubtedly within the limitations period. That date, in addition to the effective date of Mr. Weaver's termination, is also the day on which Mr. Weaver's union withdrew its grievance against the Postal Service. Mr. Weaver believes in good faith that the withdrawal of his grievance was a result of collusive contact between one of his supervisors at the Postal Service and the president of his union, the former of which had animus toward Mr. Weaver because of the ongoing leave-related dispute and the latter of which had animus toward him because Mr. Weaver had, while the grievance was pending, declared his candidacy to unseat her as union president.

Additionally, Mr. Weaver could allege additional facts that would support his contention—raised below—that equitable tolling should excuse any timeliness issue with his FMLA claims. *See* J.A. 59. Mr. Weaver engaged counsel to assist him with asserting his FMLA claims soon after he was terminated by the Postal Service. Due to various problems communicating with counsel, however, Mr. Weaver was unable

47

to assert his claims earlier.  And while it is true that counsel's erroneous advice as to the statute of limitations is not generally a basis for equitable tolling, *see Harris v. Hutchinson*, 209 F.3d 325, 331 (4th Cir. 2000), it is possible that Mr. Weaver could allege much more serious problems here that would demonstrate the requisite "extraordinary circumstances beyond [his] control" that "prevent[ed] h[im] from filing on time," *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 660–61 (4th Cir. 2018) (quoting *Harris*, 209 F.3d at 330).

To be sure, these facts do not appear in either Mr. Weaver's pro se initial complaint or his pro se proposed amended complaint.  But considering the "special judicial solicitude" that pro se plaintiffs are supposed to receive—and that Mr. Weaver assuredly did not—he should be given the chance to set forth his strongest allegations once and for all.

## CONCLUSION

The judgment of the district court should be reversed and the case remanded with instructions to permit Mr. Weaver to amend his complaint.

## REQUEST FOR ORAL ARGUMENT

Mr. Weaver respectfully requests oral argument.   This case implicates important questions about the FMLA's limitations provisions, a subject that has generated disagreement among other courts of appeals.   Oral argument will also provide an opportunity for this Court to resolve any further questions it may have about the record and the relevant law that motivated the appointment of undersigned counsel.

Date:  July 24, 2023

*/s/ Michelle S. Kallen*
Michelle S. Kallen
  *Counsel of Record*
Jonathan J. Marshall*
JENNER & BLOCK LLP
1099 New York Ave., N.W.,
  Suite 900
Washington, DC 20001
(202) 639-6000
mkallen@jenner.com
jmarshall@jenner.com

*Court-Appointed Counsel for Plaintiff-Appellant Stanford Lance Weaver*

* *Admission in the District of Columbia pending; practicing under direct supervision of members of the D.C. Bar*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limit set forth in Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains **12,102** words.

I further certify that this brief complies with the typeface requirements set forth in Federal Rule of Appellate Procedure 32(a)(5)(A) and with the type-style requirements set forth in Federal Rule of Appellate Procedure 32(a)(6).

Date: July 24, 2023

/s/ Michelle S. Kallen
Michelle S. Kallen
JENNER & BLOCK LLP
1099 New York Ave., N.W.,
    Suite 900
Washington, DC 20001
(202) 639-6000
mkallen@jenner.com

*Court-Appointed Counsel for Plaintiff-Appellant Stanford Lance Weaver*