C.A. No. 21-1157

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

STANFORD LANCE WEAVER,

*Plaintiff-Appellant*,

v.

UNITED STATES POSTAL SERVICE,

*Defendant-Appellee*.

---

On Appeal from the United States District Court
for the District of South Carolina, Aiken Division
D. Ct. No. 1:19-cv-02700-JMC
The Honorable J. Michelle Childs, District Judge

---

## RESPONSE BRIEF FOR
## APPELLEE

---

Adair Ford Boroughs
United States Attorney

Marshall Prince
Assistant United States Attorney

United States Attorney's Office for the
District of South Carolina
1441 Main Street, Suite 500
Columbia, S.C. 29201

Stephan J. Boardman
Chief Counsel, Appellate and
Commercial Litigation

Michael D. Weaver
*Counsel of Record*

United States Postal Service
475 L'Enfant Plaza, SW
Washington, D.C. 20260
202-268-2998

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………...……iii

INTRODUCTION…………………………………………………………1

JURISDICTIONAL STATEMENT………………………………………..2

STATEMENT OF ISSUES………………………….……………………..3

STATEMENT OF THE CASE……………………………………….…….4

    A. Factual Background………………………………………….….4

    B. Procedural History………………………………………….……6

SUMMARY OF ARUGMENT……………………………………...……14

STANDARD OF REVIEW………………………………….……………19

ARGUMENT…………………………………………….………...……19

I.    The District Court Properly Permitted The Postal Service To Advance Its Affirmative Statute Of Limitations Defense Because Weaver's Claims Were Facially Time-Barred……………………………………………...19

II.    The District Court Correctly Permitted The Postal Service To Rebut Weaver's New Retaliation Claim By Attaching Documents That Were Integral To The Complaint……………………………………………21

III.    The District Court Correctly Determined That Weaver's Claims Were Untimely Because The Statute Of Limitations Began To Run, At The Latest, When Weaver Received His Termination Notice…………………23

    A.    Weaver's Proposed Amended Complaint Did Not Allege An Independent Retaliation Claim For His Termination Or That Such A Claim Was Willful…………………………………………..23

i

B.    Even If Weaver Had Alleged That The Postal Service's Termination Of Him Was Willfully Retaliatory, His Claim Is Untimely Because The Statute Of Limitations Began To Run As Soon As He Received The Termination Notice…………………………………………...…25

IV.    The District Court Correctly Found That Further Amendment Of Weaver's Complaint Would Be Futile, Based On His Initial Attempts To Amend………………………………………………………………...…29

V.    The District Court Rightly Rejected Weaver's Motion For Reconsideration As Merely Reiterating Legal Disputes That Had Already Been Settled And Weaver's Additional Documents Did Not Alter That Determination…....…30

CONCLUSION……………………………………………………….……..33

# TABLE OF AUTHORITIES

## CASES

*Ahumada v. NISH,* 756 F.3d 268 (4th Cir. 2014). ....................................... 18, 19, 29

*Andon, LLC v. City of Newport News*, 813 F.3d 510 (4th Cir. 2016)......................19

*Barrett v. Illinois Dep't of Corrections*, 803 F.3d 893 (7th Cir. 2015)..2, 17, 25, 26, 27, 28

*Butler v. Owens-Brockway Plastic Products, Inc.,* 199 F.3d 314 (6th Cir. 1999) ..28

*BVR Dev., LLC v. Calatlantic Group, Inc.,* Civil Action No. ADC-18-2039, 2019 U.S. Dist. LEXIS 29830 (D. Md. Feb. 25, 2019) ..................................................22

*Chardon v. Fernandez,* 454 U.S. 6 (1981) (per curiam)…………………………..25

*Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602 (D. Md. 2011) ................................................................................. 15, 21

*Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471 (4th Cir. 2005) ........................ 15, 19

*Delaware State College v. Ricks* 449 U.S. 250 (1980)…...1, 2, 9, 10, 12, 13, 14, 16, 17, 18, 24, 25, 26, 28, 29, 31

*Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27 (1st Cir. 2003) ........................24

*Hospodor v. Burlington Industries*, No. 99-2017, 2000 U.S. App. LEXIS 2679 (4th Cir. Feb. 23, 2000) (per curiam)……………………………………………………..25

*Hudson v. Pittsylvania Cnty.,* 774 F.3d 231 (4th Cir. 2014)  ..................................3

*Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62 (4th Cir. 2016)................ 19

*Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176 (4th Cir. 2009).................... 15, 21

*Porter v. New York Univ. Sch. of Law,* 392 F.3d 530 (2d Cir. 2004)......................24

*Reed v. Lear Corp.,* 556 F.3d 674 (8th Cir. 2009)..................................................27

*Ricco v. Potter*, 377 F.3d 599 (6th Cir. 2004) .......................................................24

*Settle v. S. W. Rodgers Co.*, 1999 U.S. App. LEXIS 15745, (4th Cir. 1999)... 16, 24

## STATUTES

28 U.S.C. § 1291................................................................................................3

28 U.S.C. § 1331................................................................................................2

29 U.S.C. § 2617(c)(1)........................................................................ 1,14, 19, 26

29 U.S.C. § 2617(c)(2)....................................................................... 1, 14, 19, 26

39 U.S.C. § 409(a)…………………………………………………………….3

## RULES AND REGULATIONS

Fed. R. App. P. 4(a)(1)(b)(ii)……………………………………………………3

Fed. R. Civ. P. 12(b)(6)........................................................... ………..7

## INTRODUCTION

While Plaintiff-Appellant Stanford Lance Weaver's opening appellate brief focuses on various procedural complaints, these are ultimately a distraction from the primary legal issue in this case, the untimeliness of Weaver's claim for relief. Contrary to Weaver's assertion that he did not receive appropriate solicitude as a pro se plaintiff, the district court carefully evaluated and addressed his arguments. That Mr. Weaver was pro se before the district court does not change the law or the facts of the case.

The ultimate question in this case is when the statute of limitations began to run on Weaver's Family and Medical Leave Act ("FMLA") claim – namely, when was "the last event *constituting the alleged violation for which such action is brought*." 29 U.S.C. § 2617(c)(1-2) (emphasis added). Here, notice of removal was the last event constituting the violation Weaver alleged. Thus, the statute of limitations began to run at that point, not, as Weaver alleges, when his grievance was withdrawn by the union and the mechanical process of his termination paperwork occurred.

Our interpretation of the FMLA is both most faithful to the text and fully consistent with *Delaware State College v. Ricks*, in which the Supreme Court explained that, in the employment context, the discrimination takes place when the employer makes and communicates the final employment decision, not at the later

date when the mechanical process of termination takes place. 449 U.S. 250, 257 (1980). As the Supreme Court explained in *Ricks*, this is true even if a process such as a labor grievance might cause the employer to reverse its original decision, as that would be a remedy for the violation, not a part of the violation itself. *Id.* at 261. To hold otherwise would be to say that an employer participating in the grievance process, or even defending a lawsuit challenging an attempt to terminate an employee's employment would, itself, be part of the employment discrimination, rather than part of the remedial process for discrimination.

Weaver proposes, instead, that the word "event" suggests that any event related to the discrimination serves to toll and extend the statute of limitations, even events, such as the filing of a grievance by Weaver and its withdrawal by the union, that involve no discriminatory action by the Postal Service at all. As the Seventh Circuit has explained, such a reading not only misconstrues the statute—effectively reading "constituting the alleged violation" out of the statute—but also effectively eliminates the statute of limitations altogether by allowing events taking place decades later to toll it. *Barrett v. Illinois Dep't of Corrections*, 803 F.3d 893, 899 n. 7 (7th Cir. 2015).

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 because Weaver's complaint alleged claims that were based on federal causes of action, and because

39 U.S.C. § 409(a) gives U.S. district courts original jurisdiction over suits brought against the Postal Service. The district court entered judgment on July 1, 2020. D. Ct. Doc. 52, J.A. 83. Weaver filed a motion for reconsideration on July 29, 2020. D. Ct. Doc. 54, J.A. 84. The district court denied the motion on December 11, 2020. D. Ct. Doc. 58, J.A. 109–112. Weaver timely filed a notice of appeal on February 9, 2021. D. Ct. Doc. 60, J.A. 113. The appeal was filed within 60 days of the denial of Weaver's motion for reconsideration. Therefore, this Court has jurisdiction under 28 U.S.C. § 1291. *See* Fed. R. App. P. 4(a)(1)(B)(ii); *Hudson v. Pittsylvania Cnty.,* 774 F.3d 231, 235 n.4 (4th Cir. 2014) (noting that a motion for reconsideration tolls the time to file an appeal until the motion is decided).

## STATEMENT OF ISSUES

The issues presented by this case are:

1. What is the last act of discrimination triggering the FMLA's statute of limitations;

2. Whether a termination based on previous discipline can constitute willful retaliatory termination when the allegations are based on the underlying discipline, not the decision to terminate; and

3. Whether the district court abused its discretion by denying Weaver leave to amend his complaint where his proposed amended complaint's claims were all outside of the statute of limitations.

*See* C.A. Doc. 5, 1. (identifying the FMLA's statute of limitations and whether Weaver was wrongly denied leave to amend as issues this Court was particularly interested in).

## STATEMENT OF THE CASE

### A. Factual Background

Weaver was an employee of the Postal Service between 2005 and 2016. D. Ct. Doc. 42-1, J.A. 47. From 2014-2016, the Postal Service repeatedly warned Weaver about his absences without leave and disciplined him for the same. *Id.* at 47-48*.* Specifically, the Postal Service issued Weaver a letter of warning on October 15, 2014; a 7-day suspension on June 2, 2015; and a 14-day suspension on February 22, 2016. *Id.*

On April 12, 2016, the Postal Service sent Weaver a letter noting that he had not attended work since March 25, 2016, and instructing him to return to work or provide an explanation of why he could not. This notice was delivered on April 13, 2016, but Weaver did not respond. *Id.* On April 27, 2016, the Postal Service sent Weaver a notice to report to a fact-finding interview on May 2, 2016, or be terminated. Despite this letter being delivered on April 28, 2016, Weaver did not respond or attend the interview. *Id.*

The Postal Service then directed Weaver to attend a telephonic interview on May 20, 2016. *Id.* Weaver participated in the interview, during which he stated that

4

his prior absences were for FMLA dependent care. The Postal Service informed Weaver that he did not qualify for FMLA, and instructed him to provide medical documentation, which he said he would do that day. *Id*. at 47-48. Weaver also stated that he would return to work the following day. *Id.* However, he did not provide documentation or return to work. *Id.* at 48.

On May 23, 2016, the Postal Service conducted a pre-disciplinary hearing with Weaver, which was also attended by a representative for him. *Id.* At the hearing, Weaver provided limited, inadequate medical documentation. The documents referred only to two of the many days he did not come to work. *Id.* At the hearing, Weaver admitted that he had not been regular in his attendance, and that his attendance had been previously discussed with him. *Id.* He maintained that he was eligible for leave due to dependent care, despite having been informed he did not qualify for FMLA leave, and despite his failure to provide substantiating documentation. *Id.*

On June 3, 2016, the Postal Service issued a notice of removal, effective on July 5, 2016. *Id.* This was based on the fact that Weaver had been absent since March 26, 2016, and had been absent without leave for a total of 309 hours with multiple escalating warnings and suspensions that had not induced Weaver to return to work or to explain his absences. *Id.* at 47-48. This letter was delivered to Weaver by certified mail on June 4, 2016. *Id.* at 49.

5

After receiving this notice, Weaver filed a grievance with his local union, the Augusta Area Local. D. Ct. Doc. 42-2, J.A. 50. On September 23, 2016, the union notified the Postal Service that it was withdrawing the case from the grievance process.[1]

On October 19, 2016, the Postal Service sent Weaver a "Notification of Personnel Action," notifying Weaver that he would be paid for any accumulated leave and that his benefits were terminated as of September 23, 2016. D. Ct. Doc. 54-1, J.A. 87. The notification also stated that Weaver's last day in "pay status" was July 5, 2016. *Id.*

**B. Procedural History**

Weaver filed his initial complaint on September 23, 2019. D. Ct. Doc. 1, J.A. 5. The complaint alleged that Weaver's FMLA rights "were interfered with" when Weaver was denied FMLA leave during two time periods, his wife's pregnancy in 2014-15 and the birth of his son on "March 2015 and thereafter." D. Ct. 1, J.A. 9. The next two sentences of the complaint provided specific dates for the alleged interference, stating that his allegedly protected leave was taken to care for his wife between September of 2014 and March of 2015 and his son between March of 2015 and May of 2016. *Id.*

---

[1] The date Weaver filed this grievance is not in the record, although it must have been between June 4, 2016, and September 23, 2016.

Weaver's complaint did not state that the alleged FMLA violation was willful or make any factual allegations indicating that it was. *Id.*

The Postal Service moved to dismiss the complaint on January 13, 2020. D. Ct. 22, J.A. 15. In its motion, the Postal Service explained that, because the FMLA's time limitation is two years, and the interference Weaver alleged ended in May of 2016, his complaint was filed out of time. *Id.* at J.A. 15-16. The Postal Service further explained that, even if the court assumed that the three-year statute of limitations for willful violations applied, the complaint would still have been filed out of time. *Id.* Because this defect was apparent on the face of the complaint, the Postal Service explained that it could properly assert this affirmative defense in a Fed. R. Civ. P. 12(b)(6) motion. *Id.*

The magistrate judge overseeing the case issued a *Roseboro* order to Weaver, explaining the process for responding to a motion to dismiss, and the consequences for failing to do so. D. Ct. Doc. 23, J.A. 19. This order also explained that Weaver was permitted to submit explanations of facts, legal argument, and additional evidence including affidavits or documents. *Id.* at J.A. 20.

Rather than respond to the Postal Service's motion to dismiss by February 13, 2020, Weaver requested an extension of time to amend his complaint and filed a motion to amend. D. Ct. Doc. 30, J.A. 26; D. Ct. Doc. 31, J.A. 28. This proposed amendment was procedurally defective as it consisted of only two paragraphs

7

Weaver wished to insert into his original complaint, rather than a proposed amended complaint. *Id.*

Weaver then filed an opposition to the Postal Service's motion to dismiss, on February 18, 2020. D. Ct. Doc. 32, J.A. 30. In his opposition, Weaver made two arguments that his suit was filed within the statute of limitations. First, he argued that, as his proposed amended complaint stated, he was fired on September 23, 2016, and this was the Postal Service's final action that violated his rights. *Id.* at J.A. 31-32. Second, Weaver argued that his suit did allege a willful violation, as it used the "words denied, interfered, and retaliation in the body" of the complaint, and those words are "almost exclusively tied to a willful act by an individual or group." *Id.*

The district court denied without prejudice Weaver's first motion to amend his complaint on March 20, 2020, with an explanation that a correct amended pleading should fully replace the original complaint, and instructions to refile a proper amended complaint by April 3, 2020. D. Ct. Docket Report, J.A. 3. Weaver filed a second motion to amend his complaint on April 3, 2020. D. Ct. Doc. 38, J.A. 32.

Weaver's proposed amended complaint identified additional instances in which the Postal Service allegedly interfered with his FMLA rights or retaliated for his exercise of those rights. *Id.* at J.A. 36-38. The only allegation to fall within even a three-year statute of limitations was that the Postal Service allegedly terminated

Weaver on September 23, 2016, exactly three years prior to filing his complaint. *Id.*

On April 16, 2020, the Postal Service filed an opposition to Weaver's motion to amend. D. Ct. 42, J.A. 40. In its motion, the Postal Service argued that the proposed amended complaint simply reiterated Weaver's time-barred claims and amendment would be futile. *Id.*

The Postal Service also explained that the Postal Service sent a notice of removal terminating Weaver on June 3, 2016, he received the termination notice on June 4, 2016, and the termination was effective on July 5, 2016. *Id.* at J.A. 42. The Postal Service further explained that September 23, 2016, was the day that Weaver's grievance was withdrawn, not his termination date. *Id.* The Postal Service explained that the Postal Service "must resolve labor grievances before finalizing the administrative paperwork to reflect an employee's termination in his Official Personnel File[.]" *Id.*

The Postal Service also argued that, under *Ricks,* the statute of limitations began to run on June 4, 2016, when Weaver received notice of his termination. As such, even under the facts in the proposed amended complaint, Weaver's claim was facially time-barred under even the three-year statute of limitations. *Id.* at 43-44. The Postal Service attached Weaver's notice of removal and the grievance withdrawal letter to its motion to dismiss as documents integral to the complaint. *Id.* at 42, 47-48.

Weaver's reply was due on April 23, 2020. D. Ct. Docket Report, J.A. 3. Weaver did not file a response to the Postal Service's motion.

On May 26, 2020, the magistrate judge issued an order and recommendation denying Weaver's motion to amend as futile and recommending that the district court dismiss the case. D. Ct. Doc. 44, J.A. 51-55.

The magistrate judge explained that, while pro se complaints are to be construed liberally, the court cannot ignore a clear failure to allege facts setting forth a claim. *Id.* at J.A. 52-53. The magistrate judge agreed with the Postal Service that the statute of limitations began to run when Weaver received the notice of termination, not on the day he was terminated, making his complaint out of time. *Id.* at J.A. 54. The magistrate judge also agreed that the documents attached to the Postal Service's motion were integral to the complaint. *Id.*

On June 9, 2020, Weaver filed objections to the report and recommendation. D. Ct. Doc. 47, J.A. 57. Weaver stated three objections to the order. First, he argued that the motion to amend was wrongly denied because he was not aware that he was permitted to respond to the Postal Service's opposition and was confused by the legal process. *Id.*

Second, he argued that *Ricks* was inapplicable as the notice of removal he received from the Postal Service was "not a notice of removal[.]" *Id.* at J.A. 58. Rather, Weaver argued that the letter received from the Postal Service "was a letter

10

notifying Plaintiff of a planned action, and nothing more" and that there was "no evidence" that the Postal Service had followed its own regulations in obtaining authorization from an appropriate Postal Service official before issuing the notice. *Id.* Weaver also argued that the date of discharge was the "last event constituting an FMLA violation" rather than the date he received notice. *Id*. at J.A. 58-59. Weaver did not argue that he did not receive the notice, that the document was inauthentic, or that it was inappropriately admitted.

Third, Weaver stated that, if his suit was time-barred, the statute of limitations should be equitably tolled, without providing a basis for tolling. *Id.* at J.A. 59.

Weaver attached several documents to his objection, including summaries of the FMLA and portions of the APWU's collective bargaining agreement, but did not cite them in the text of his objections. *Id.* at J.A. 60-69.

On June 23, 2020, the Postal Service filed its response to Weaver's objections. D. Ct. Doc. 48, J.A. 70. In its response, the Postal Service addressed Weaver's three arguments in turn. First, it explained that the issue of Weaver's motion to amend being denied was irrelevant. The magistrate judge had rejected Weaver's motion to amend as futile because the claims in the amended complaint were *also* facially outside of the statute of limitations. *Id.* at 72. As such, the result was the same as if the motion to amend had been granted, and then the case was dismissed.

Second, the Postal Service argued that the magistrate judge had correctly

11

applied *Ricks,* and the statute of limitations had begun to run on Weaver's claim when he received his notice of removal because the actionable employment discrimination occurs when the termination decision is made and conveyed to the employee, not when the automatic process of termination actually takes place. *Id.* Finally, the Postal Service noted that Weaver had provided no argument for why his argument should be equitably tolled and argued that tolling was not warranted. *Id.* at 74.

On July 1, 2020, the district court issued its decision accepting the magistrate judge's report and recommendation, granting the Postal Service's motion to dismiss, and dismissing Weaver's complaint with prejudice. D. Ct. Doc. 51, J.A. 76. In its order, the district court noted that its review of the magistrate judge's order was de novo with respect to any portion of the order to which the Weaver had objected. *Id.* at J.A. 79. The district court also noted that it was required to construe pro se documents liberally, but not act as an advocate for Weaver. *Id.*

The court then explained that, under Fourth Circuit law, objections to a magistrate judge's order must be specific objections to the magistrate judge's findings, not simply a restatement of the arguments made before the magistrate judge, as the latter would frustrate the purpose of conserving judicial resources. *Id.* at J.A. 80. The district court then found that Weaver's objections merely argued the merits of the case, rather than objecting to specific findings by the magistrate judge.

12

*Id.* at J.A. 81. As such, the district court explained that it was not required to give an explanation for adopting the report, but noted that it had carefully reviewed it, and concluded that Weaver's claim was untimely. *Id.* Additionally, the district court agreed with the magistrate judge that the proposed amended complaint was also time-barred, and, as such, the complaint should be dismissed with prejudice as allowing the amendment would be futile. *Id.* at 1 n. 1, J.A. 76 n. 1.

On July 29, 2020, Weaver filed a motion for reconsideration. D. Ct. Doc 54, J.A. 84. Weaver reiterated his argument that he should have been permitted to amend his complaint. *Id.* at J.A. 85. He also argued that he had specifically objected to the magistrate judge's recommendation by arguing that the notice of removal he received from the Postal Service was not like the notice of removal in *Ricks*. *Id.* He also reiterated his argument that he had still been a Postal Service employee until September 23, 2016, noting that his benefits continued through that date, and attaching supporting documentation. D. Ct. Docs. 54, 54-1-3, J.A. 85-102.

On August 6, 2020, the Postal Service filed an opposition to Weaver's motion. D. Ct. Doc 55, J.A. 103. In its Opposition, the Postal Service argued that Weaver was merely continuing to litigate legal issues that had already been decided, which was not an appropriate purpose for a motion for reconsideration. *Id.* at J.A. 107. The Postal Service also argued that Weaver's continued litigation over whether he should have been permitted to amend his complaint was irrelevant, because both the

13

magistrate judge and the district court had held that, even if Weaver's termination date *was* on September 23, 2016, his complaint would still have been time-barred because the operative date was when he received his termination notice. *Id.* at J.A. 108. Ultimately, the Postal Service explained, Weaver was seeking to re-argue the holding that, under *Ricks*, the statute of limitations began to run when he received his termination notice (rather than his termination date), and this was not an appropriate subject for a motion for reconsideration. *Id.* at J.A. 107-108.

On December 11, 2020, the district court denied Weaver's motion for reconsideration. D. Ct. Doc. 58, J.A. 109. The district court held that it had already considered and properly rejected Weaver's arguments that the statute of limitations did not begin to run when he received his notice of termination and that *Ricks* had been incorrectly applied. *Id.* at J.A. 112.

Weaver filed a timely appeal on February 9, 2021. D. Ct. Doc. 60, J.A. 113.

## SUMMARY OF ARGUMENT

The magistrate judge and district court correctly permitted the Postal Service to advance its affirmative statute of limitations defense, because Weaver's claims were facially time-barred. The FMLA has a two-year statute of limitations. 29 U.S.C. § 2617(c)(1). In the case of a willful violation, the statute of limitations is extended to three years. 29 U.S.C. § 2617(c)(2). In his initial complaint, which was filed on September 23, 2019, Weaver stated that his claim was for FMLA

14

interference with the final act taking place in May of 2016. Nothing in the complaint suggested that the Postal Service's violation was willful, but, even if it was subject to the three-year statute of limitations, it was still filed out of time. As such, it was appropriate for the Postal Service to advance its affirmative defense. *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

After Weaver proposed amending his complaint to add a new termination claim, it was both permissible and appropriate for the Postal Service to attach the termination notice itself in order to show that this claim was also outside of the statute of limitations. A document can be attached to a 12(b)(6) motion when it is "integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). To be integral, the "very existence" of the document must give rise to the rights asserted. *See, e.g.*, *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted). Here, the notice of removal is the document that removed Weaver from his employment, and its receipt created his right to sue for his termination. As such, it is integral to Weaver's termination claim, and was properly admitted.

In Weaver's proposed amended complaint, he states that he was terminated on September 23, 2016, but does not allege any facts indicating that the termination itself was willful. Rather, the proposed amended complaint states that the termination was "a result of four letters of warning citing absences that [were related

15

to Weaver's denied FMLA leave]." D. Ct. 38-1, J.A. 38-39. This does not support a claim that the termination itself was willful, even if the original denial of leave was. In order to be willful, Weaver would have to allege that the Postal Service had knowingly or recklessly violated the law, rather than merely terminated an employee for receiving four letters of warning for absences. *See Settle v. S. W. Rodgers Co.,* No. 98-2312, 1999 U.S. App. LEXIS 15745, at *9 (4th Cir. July 12, 1999) (per curium). As such, the two-year statute of limitations applies, and the suit was filed significantly out of time.

Even if the three-year statute of limitations applied, the proposed amended complaint would still be filed out of time. The notice of removal demonstrates that Weaver was notified of his termination on June 4, 2016. D. Ct. Doc. 42-1, J.A. 47. Once Weaver was notified of his termination, the statute of limitations on his claim began to run. Weaver responds that time only began to run when his termination was finalized, but this is counter to the Supreme Court's reasoning in *Ricks,* and the language of the FMLA itself.

In *Ricks,* the Supreme Court explained that the actionable adverse employment discrimination takes place when the employer notifies the employee of the employment decision, not at the later date when the mechanical termination process itself takes place. 449 U.S. at 257. The *Ricks* Court also explained that this was true despite the fact that Ricks filed a labor grievance that might have reversed

his termination. *Id.* at 261. This was so because the grievance process was a potential remedy for the initial discrimination, not a part of the violation itself, which had already been completed by notifying the employee of the adverse employment determination. *Id.*

The FMLA states that the statute of limitations begins to run after "the last event constituting the alleged violation for which such action is brought." In this case, the event which constituted the violation was the Postal Service deciding to terminate Weaver and notifying him via the notice of removal. This interpretation is consistent with both the language of the statute and the Supreme Court's guidance in *Ricks*. Weaver instead proposes a broad reading of "event" that would toll the statute of limitations whenever an event related to the discrimination takes place. This is an overbroad reading of the statute that, as other courts have explained, would effectively eliminate the statute of limitations. *See, e.g., Barrett,* 803 F.3d at 899 n. 7.

Because the proposed amended complaint was time-barred, the district court correctly declined to allow Weaver to amend on the grounds that it would be futile. Weaver's argument that he was not permitted to amend his complaint a single time ignores the fact that the magistrate judge and district court both evaluated the proposed amended complaint on the merits and found that it did not state a timely claim. D. Ct. Doc. 51, J.A. 76 n. 1; D. Ct. Doc. 44, J.A. 54. As this Court has

17

explained, denying a plaintiff leave to amend on the basis that the proposed amended complaint does not state a valid claim is essentially the same as granting a motion to dismiss the amended complaint. *See United States ex rel. Ahumada v. NISH,* 756 F.3d 268, 274 (4th Cir. 2014).

Nor was it outside of the district court's considerable discretion to dismiss with prejudice. Based on Weaver's two attempts to amend his complaint, and his objections to the magistrate judge's order, the very latest he could allege a claim was for his termination, and that claim was not timely.

This is reinforced by the fact that Weaver's motion for reconsideration did not suggest any claims that were later in time, but merely continued to advance his prior arguments about when the time began to run on his retaliatory termination claim. D. Ct. Doc. 54, J.A. 84. Weaver argues that the district court wrongly refused to consider his documentary evidence in this motion for reconsideration. Appellant Brief at 31. These documents, however, relate purely to the date of Weaver's termination, not the date when he was informed of it. D. Ct. Docs. 54-1-3, J.A. 87-102. Because the magistrate judge and district court had already concluded that *Ricks* applied, those documents were legally irrelevant, and properly excluded. Even if they were not, those documents had been in Weaver's possession for the duration of the litigation, and there was no valid reason that they were introduced for the first time in a motion for reconsideration.

## STANDARD OF REVIEW

The dismissal of a complaint for failure to state a claim is reviewed de novo. *See Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 71 (4th Cir. 2016). A district court's decision that permitting additional amendment would be futile is reviewed for abuse-of-discretion. *See Andon, LLC v. City of Newport News*, 813 F.3d 510, 516 (4th Cir. 2016). The dismissal of a specific proposed amended complaint as legally defective is reviewed de novo, under the same standard as a motion to dismiss. *United States ex rel. Ahumada*, 756 F.3d at 274.

## ARGUMENT

## I. The District Court Properly Permitted The Postal Service To Advance Its Affirmative Statute Of Limitations Defense Because Weaver's Claims Were Facially Time-Barred.

A defendant may raise an affirmative statute of limitations defense in a 12(b)(6) motion when the fact that a complaint is time-barred is apparent on its face. *See Dean,* 395 F.3d at 474; D. Ct. Doc. 22, J.A. 16. Weaver's original complaint was, on its face, filed out of time, and therefore appropriately subject to a 12(b)(6) dismissal. *Id.* at J.A. 15.

The FMLA is subject to a two-year statute of limitations that is extended to three for willful violations. 29 U.S.C. § 2617(c)(1-2). Here, Weaver's complaint was filed on September 23, 2019. D. Ct. Doc. 1, J.A. 5. Despite not being especially detailed, the complaint was explicit about when Weaver's claims arose, and

Weaver's argument to the contrary is unpersuasive.

It is true that one sentence of Weaver's complaint states that his FMLA rights after his son's birth were interfered with from "3/2015 and thereafter" but the very next two sentences of the complaint provide specific dates from that time period, making clear that the final date of the interference was May of 2016, well over three years before the suit was filed, defeating even a claim of willful interference (which the complaint did not allege). *Id.* at J.A. 9. The only reasonable reading of the complaint is that it begins with a general summary of the dates involved, and then immediately details the specific dates for both cases of alleged interference, and the statements are in no way inconsistent with each other.

Furthermore, this timeline was confirmed by Weaver in his proposed amended complaint. The proposed amended complaint makes clear that he was denied "FMLA protection from 3/2015-5/2016 after the birth of his child[.]" D. Ct. Doc. 38-1, J.A. 36. Even if the original complaint were ambiguous—which it was not— then the amended complaint makes clear that the magistrate judge's interpretation of it was correct and it is disingenuous of Weaver to now claim otherwise.

As such, the court's dismissal of Weaver's interference complaint as untimely was correct and should be affirmed.

## II. The District Court Correctly Permitted The Postal Service To Rebut Weaver's New Retaliation Claim By Attaching Documents That Were Integral To The Complaint.

On appeal, Weaver argues, for the first time, that the Postal Service should not have been permitted to attach his termination notice to its motion, as it was not integral to the complaint. As a threshold matter, while Weaver disputed the date his termination became effective in his objections to the magistrate judge's report, he did not claim that his termination notice was not integral to the case or challenge its authenticity either in an opposition to the Postal Service's motion—which he did not file—or in his objections to the magistrate judge's recommendation, so this issue has been waived.

Putting waiver aside, although a 12(b)(6) motion must generally be decided without the aid of documentary evidence, there are several exceptions, including one for attaching documents that are "integral to the complaint and authentic." *Philips*, 572 F.3d at 180.

As Weaver notes, a document is integral when it "by its 'very existence, and not the mere information it contains gives rise to the legal rights asserted.'" *See, e.g., Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611 (citation omitted). The documents attached to the Postal Service's brief fall within this category. The termination notice is the document whose "very existence" triggered Weaver's right to sue for retaliation.

Weaver asserts that this document is not integral to his claims, because it was his *termination* that gave rise to the claims not the notice of termination. Appellant Brief at 31-32. This notice, however, is the means by which the Postal Service effected the termination. If it had not notified Weaver about his termination, he would not have been terminated and would have continued to work for the Postal Service, thereby having no claim for retaliatory termination. To be sure, the Postal Service could have informed Weaver of his termination in a different manner, but it did not. The attached notice was the document terminating Weaver and triggering his right to sue. Without it, there is no claim at all, making it clearly integral to the complaint. *See, e.g., BVR Dev., LLC v. Calatlantic Group, Inc.,* Civil Action No. ADC-18-2039, 2019 U.S. Dist. LEXIS 29830, at *12 (D. Md. Feb. 25, 2019) (holding that a contract termination notice is integral to the complaint as it "implicates the legal rights asserted by Plaintiffs and . . . whether Plaintiffs can even assert the claims raised").

Weaver responds by arguing that, if termination notices were generally admissible in 12(b)(6) motions, then termination notices could be used to defeat any claim by, for example, defeating a religious discrimination claim by attaching a termination notice stating that the employee was terminated for some other reason. Appellant Brief at 32. That is an inapposite analogy, as the Postal Service did not cite the termination notice for any of the factual assertions contained in it, such as

22

that Weaver failed to attend multiple mandatory meetings to discuss his attendance or that Weaver did not qualify for FMLA leave. The document was instead used to establish the date at which Weaver received notice of his termination, which triggered the statute of limitations in this case. If Weaver had alleged he *received* the document on a different date, that could have created a contested issue of material fact, defeating the motion, but he did not, only alleging that his termination became *effective* on a different date than the one listed in the document (i.e., the date his union withdrew his grievance). *See* D. Ct. Doc. 42, J.A. 43; D. Ct. Doc. 42-2, J.A. 50.

## III. The District Court Correctly Determined That Weaver's Claims Were Untimely Because The Statute Of Limitations Began To Run, At The Latest, When Weaver Received His Termination Notice.

### A. Weaver's Proposed Amended Complaint Did Not Allege An Independent Retaliation Claim For His Termination Or That Such A Claim Was Willful.

While Weaver's opening brief characterizes his proposed amended complaint as making a claim that the Postal Service willfully retaliated against him by firing him for attempting to exercise his FMLA rights, this does not accurately reflect the claim made in the proposed amended complaint. Rather, the proposed amended complaint states that Weaver was fired "on 9/23/2016, as a result of four letters of warning citing absences that occurred [relating to Weaver's denied FMLA leave]." D. Ct. Doc. 38-1, J.A. 38-39.

23

In order for an FMLA violation to be willful, the employer's action must be either knowingly in violation of the FMLA or with reckless disregard of it. *See Settle v. S. W. Rodgers Co.*, 1999 U.S. App. LEXIS 15745, at *9. *See also Porter v. New York Univ. Sch. of Law,* 392 F.3d 530, 531 (2d Cir. 2004); *Ricco v. Potter*, 377 F.3d 599, 602-03 (6th Cir. 2004); *Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33-34 (1st Cir. 2003).

Here, all Weaver has alleged about his termination itself is that it was due to multiple warnings for his unexcused absences. Weaver, therefore, did not allege that his termination itself was retaliatory or represented willful discrimination.[2] Rather, Weaver alleges that his FMLA rights were interfered with by the denial of his leave requests, which led to his removal. No facts alleged in the complaint suggest that the termination itself was either retaliatory or willful, only the denial of FMLA leave.[3]

As such, the termination itself is not an independent event creating a claim. *See Ricks,* 449 U.S. at 257-258 (to determine the timeliness of an employment lawsuit the court must "identify precisely the unlawful employment practice") (internal quotation marks omitted). Rather it is a consequence of Weaver's

---

[2] Weaver does make a catch all allegation that all the Postal Service's actions were willful, but this is not sufficient to state a claim for willful FMLA retaliation. *See Settle*, 1999 U.S. App. LEXIS 15745, at *9.

[3] Weaver does note that he was not offered a "last chance/firm choice" agreement before being terminated but does not allege that that decision was retaliatory. D. Ct. Doc. 38-1, J.A. 39.

unapproved absences, which are time-barred. It cannot form a basis for an independent claim. *See id.* (explaining that a later termination resulting from the prior adverse employment action does not form the basis for a claim because it is the consequence of the adverse action, not an adverse action itself). Even if it could, it would have the two-year limitation period for non-willful FMLA claims, making this claim time-barred regardless of whether it began to run in June or September of 2016.

### B. Even If Weaver Had Alleged That The Postal Service's Termination Of Him Was Willfully Retaliatory, His Claim Is Untimely Because The Statute Of Limitations Began To Run As Soon As He Received The Termination Notice.

While the issue of when the statute of limitations for an FMLA claim begins to run is a question of first impression in this Circuit, the result is dictated by the Supreme Court's decision in *Ricks.* The correct interpretation of the statutory language was explained by the Seventh Circuit in *Barrett. Ricks*, 449 U.S. at 257-58; *Barrett*, 803 F.3d at 898.

As the Supreme Court in *Ricks* explained, the actionable instance of employment discrimination—or retaliation in this case—occurs when the adverse employment decision is "made and communicated[.]" *Ricks*, 449 U.S. at 258.[4] The

---

[4] *Ricks* was a Title VII case, but its reasoning applies with equal force to other employment cases. *See, e.g., Chardon v. Fernandez,* 454 U.S. 6, 7 (1981) (per curiam) (applying *Ricks* to 42 U.S.C. § 1983 claim; *Hospodor v. Burlington*

pendency of a union grievance, even if it might cause the employer to change its earlier decision, does not toll the statute of limitations, because it is a *remedy* for the adverse action, not a part of the adverse decision creating the cause of action. *Id.* at 261.

Weaver disputes the applicability of *Ricks* in two primary ways, both of which are misguided. First, he argues that, because the FMLA uses the word "event" instead of "action" in the statute of limitations, it means that any event related to the claim resets the statute of limitations, even if it is not an action taken by the Postal Service. Appellant Brief at 38-43. Second, he attempts to distinguish *Ricks* by noting that the *Ricks* Court found that nothing suggested that Ricks's termination was "tentative" and the district court in this case did not make such a finding. Appellant Brief at 44.

Both of Weaver's arguments are unavailing. First, Weaver reads the word "event" in isolation, ignoring the full context of the sentence it is in. The full language is "such action may be brought within 3 years of the date of the last event *constituting the alleged violation* for which such action is brought." 29 U.S.C. § 2617(c)(1-2) (emphasis added). The full statutory language thus excludes subsequent events resulting from, but not constituting the violation. *See Barrett,* 803

*Industries*, No. 99-2017, 2000 U.S. App. LEXIS 2679, at *3 (4th Cir. Feb. 23, 2000) (per curiam) (applying *Ricks* to ADA and ADEA claim); *Barrett,* 803 F.3d at 899 (applying *Ricks* to FMLA claim).

F.3d at 899 (noting that there can, definitionally, only be one "last event," the one that creates the violation and allows the plaintiff to file suit for it); *see also Reed v. Lear Corp.,* 556 F.3d 674, 678 (8th Cir. 2009) (holding that the FMLA violation occurs when leave is denied, not when being absent without leave triggers employment consequences). The "final event" in this context, is the event which gives the plaintiff the ability to sue. As such, Weaver's argument that the date his benefits ceased is the final event must fail, because it would mean that his claim was unripe at the time Weaver received his termination notice, which is plainly untrue. *Id.* (explaining that a plaintiff cannot say that suit *could* have filed under the FMLA for interference but was still within the statute of limitations when terminated more than two years later).

If this Court were to adopt Weaver's reading of the statute, it would mean that any subsequent event that is related to the alleged FMLA violation would reset the statute of limitations. Under this reading of the statute, if Weaver were to re-apply for employment with the Postal Service and be rejected due to his prior termination, this event would not only revive the claims relating to his termination, but his original interference claims. *See id.* at 899 n. 7 (noting that a broad reading of the word "event" would allow the statute of limitations in FMLA cases to be effectively tolled for decades).

Weaver attempts to distinguish *Barrett* on the basis that it was a case solely

about interference with FMLA leave, without a retaliatory termination claim, but that does nothing to lessen the persuasive power of the *Barrett* court's analysis of the meaning of the FMLA's "event" language, as the same language applies to both interference and retaliation claims.

Meanwhile the only case Weaver cites in favor of its FMLA interpretation is *Butler v. Owens-Brockway Plastic Products, Inc.*, which not only does not support Weaver's interpretation of the "event" language, but contains no analysis of that issue at all, using the word "action" and not quoting or discussing the specific FMLA language. 199 F.3d 314, 317 (6th Cir. 1999) ("The [FMLA] provides that a plaintiff has two years from the date of the last adverse *action* in violation of the [FMLA] to bring a claim[.]") (emphasis added).

Weaver's second argument also fails. The notice submitted by the Postal Service, whose authenticity Weaver does not dispute, states that Weaver "will be removed by the Postal Service effective . . . July 5, 2016." D. Ct. Doc. 42-1, J.A. 47. It does not instruct Weaver to attend a hearing or other procedure. Rather, it makes clear that this notice represents the Postal Service's decision to terminate Weaver's employment. The notice additionally instructs Weaver to "turn in all government property issued to you[.]" *Id.* at J.A. 48. While the notice *does* inform Weaver of his right to file a grievance, this is no different than Ricks's right to file one in *Ricks.* As the Supreme Court explained in that case, that does not mean that the employer's

28

determination to terminate Weaver was tentative; because filing a labor grievance is a way to obtain a remedy, not to influence the original decision which has already been made. *Ricks*, 449 U.S. at 261.

## IV. The District Court Correctly Found That Further Amendment Of Weaver's Complaint Would Be Futile, Based On His Initial Attempts To Amend.

While Weaver argues that he was not permitted to amend his complaint even once, that is misleading in the procedural context of this case. Though the court did formally reject Weaver's attempt to amend his complaint, it rejected the proposed amended complaint on the merits, not for any procedural reason.[5] D. Ct. Doc. 51, J.A. 76 n. 1. *See also* D. Ct. Doc. 44, J.A. 54. The consideration given to Weaver's amended complaint in this case by both the magistrate judge and the district court is precisely the same as if the court had first granted Weaver's motion to amend, and then dismissed the amended complaint based on the arguments in the Postal Service's motion. *See United States ex rel. Ahumada,* 756 F.3d at 274 (analogizing rejecting a proposed amended complaint to granting a motion to dismiss it).

Nor did the district court abuse its discretion by finding that further amendment would have been futile. At the point at which Weaver's complaint was

---

[5] The magistrate judge also rejected Weaver's first attempt to amend, because it proposed edits to the complaint, rather than attaching a proposed amended complaint, but permitted Weaver to make a second attempt to amend. D. Ct. Doc. 36, J.A. 3.

dismissed, he had twice moved to amend his complaint, and the proposed amended complaint before the magistrate judge and the district court continued to advance time-barred interference claims and asserted an additional time-barred retaliation claim. It was well within the district court's discretion to conclude that Weaver had no claims that were not time-barred.

On appeal, Weaver asserts that, if given leave to amend, he would have asserted an entirely new claim alleging a conspiracy between his union and the Postal Service but does not explain why he did not advance this conspiracy theory sooner (or provide any facts supporting it). At the time the district court held that further amendment would be futile, Weaver had attempted to amend his complaint multiple times, and had never advanced a claim that was not time-barred. D. Ct. Doc. 51, J.A. 76 n. 1 (noting that amendment would be futile, because all of Weaver's claims were time-barred, even in the proposed amended complaint). The district court correctly determined that the proposed amended complaint did not state a claim that was not time-barred and did not abuse its discretion in holding that further amendment would be futile.

**V. The District Court Rightly Rejected Weaver's Motion For Reconsideration As Merely Reiterating Legal Disputes That Had Already Been Settled And Weaver's Additional Documents Did Not Alter That Determination.**

In his opening brief, Weaver characterizes his motion for reconsideration as attaching documentation rebutting the Postal Service's claimed termination date,

which the district court wrongly rejected. Appellant Brief at 31. That misapprehends the Postal Service's argument, the district court's order, and the district court's denial of Weaver's 59(e) motion.

Weaver has continually asserted that his final day with the Postal Service was the day the union withdrew his grievance and his benefits terminated, September 23, 2016. *See* D. Ct. Doc. 38-1, J.A. 38. As a preliminary matter, the apparent discrepancy between the July 5, 2016 removal date listed in the notice of removal and the September 23, 2016 date that Weaver alleges he was actually removed is acknowledged and explained in the Postal Service's opposition to Weaver's motion to amend his complaint. D. Ct. Doc. 42, J.A. 43 n. 4. The termination date listed by Weaver reflects the date the union withdrew the grievance and his benefits ended. *Id.* (explaining that "Defendant must resolve labor grievances before finalizing the administrative paperwork to reflect an employee's termination in his Official Personnel File").

More importantly, whether Weaver's final day was on July 5, 2016 or September 23, 2016 was legally irrelevant to the magistrate judge's recommendation and the district court's decision endorsing it. The Postal Service argued, and the district court held, that, as explained by the Supreme Court in *Ricks*, the statute of limitations began to run when the termination notice was *received.* D. Ct. Doc. 51, J.A. 78. While Weaver disputes this legal conclusion on appeal, he does *not* dispute

31

the fact that he received the Postal Service's termination notice via Certified Mail on the date provided in the Postal Service's opposition to his motion to amend. As such, the new documents attached to Weaver's 59(e) motion did nothing more than attempt to continue to litigate a legally irrelevant fact. Meanwhile, the other arguments in the motion merely attempted to relitigate issues that had already been adjudicated and decided by the district court and were correctly rejected as inappropriate in a 59(e) motion.

Moreover, even if the documents attached to Weaver's motion for reconsideration *were* legally relevant, it would have been inappropriate to raise them for the first time in a rule 59(e) motion, when they are documents Weaver received prior to filing suit and had had in his possession for the entire duration of the litigation. While Weaver was pro se at the time he filed his motion for reconsideration, this does not automatically permit him to provide new documents for the first time in a motion for reconsideration. His motion contained no explanation for why these documents could not have been presented to the court in any of Weaver's prior filings, particularly as the magistrate judge had specifically provided instructions for attaching documents to a motion, and Weaver's prior filings demonstrated that he understood that he was permitted to do so. D. Ct. Doc. 23, J.A. 20 (explaining that plaintiff may attach documents to his opposition to the Postal Service's motion to dismiss); Plaintiff's objections to order and report and

32

recommendations, D. Ct. Docs. 47-1-4 J.A. 60-69 (attaching documents to filing).

## CONCLUSION

For the forgoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

*/S/ Michael D. Weaver*

| | |
|---|---|
| Adair Ford Boroughs | Stephan J. Boardman |
| United States Attorney | Chief Counsel, Appellate and |
| | Commercial Litigation |
| | |
| Marshall Prince | Michael D. Weaver |
| Assistant United States Attorney | *Counsel of Record* |
| | |
| United States Attorney's Office for the | Office of the General Counsel |
| District of South Carolina | United States Postal Service |
| 1441 Main Street, Suite 500 | 475 L'Enfant Plaza, S.W. |
| Columbia, S.C. 29201 | Washington, D.C. 20260-1127 |
| | (202) 268-2998 |
| | michael.d.weaver@usps.gov |

Date: September 22, 2023

33

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. __21-1157__    **Caption:** Stanford Lance Weaver v. United States Postal Service

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains ____7,955____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
14-point Times New Roman _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Michael D. Weaver _____

Party Name United States Postal Service _____

Dated: 09/22/2023 _____