C.A. No. 21-1157

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

STANFORD LANCE WEAVER,

*Plaintiff-Appellant*,

v.

UNITED STATES POSTAL SERVICE,

*Defendant-Appellee*.

`

---

On Appeal from the United States District Court
for the District of South Carolina, Aiken Division
D. Ct. No. 1:19-cv-02700-JMC
The Honorable J. Michelle Childs, District Judge

---

## REPLY BRIEF FOR APPELLANT

---

Michelle S. Kallen
  *Court-Appointed Counsel of Record*
Jonathan J. Marshall*
JENNER & BLOCK LLP
1099 New York Ave., N.W., Suite 900
Washington, DC 20001
(202) 639-6000
mkallen@jenner.com
jmarshall@jenner.com

* *Admission in the District of Columbia pending; practicing under direct supervision of members of the D.C. Bar*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................... ii

INTRODUCTION ................................................................ 1

ARGUMENT .................................................................... 4

I.    The Proceedings Below Were Procedurally Flawed ..................... 4

      A.    Neither the Initial Complaint Nor the Proposed Amended
            Complaint Facially Supports the Postal Service's Timeliness
            Defense ................................................... 4

      B.    The June 2016 Notification Letter Is Not Integral to the
            Complaint ................................................. 7

      C.    The District Court Was Required to Rule on Mr. Weaver's
            Objections ............................................... 12

II.   The Statute of Limitations Did Not Begin to Run Before Mr.
      Weaver's Termination ............................................ 13

      A.    The FMLA's Text Resolves This Case ....................... 14

      B.    *Ricks* Does Not Support Dismissal ...................... 17

III.  The Postal Service's Alternative Arguments for Affirmance Lack
      Merit ........................................................... 20

CONCLUSION ................................................................. 26

CERTIFICATE OF COMPLIANCE ................................................. 27

# TABLE OF AUTHORITIES

CASES

*Alvarez v. Lynch*, 828 F.3d 288 (4th Cir. 2016) ................................................. 13

*American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212
   (4th Cir. 2004) ................................................ 9

*Barrett v. Illinois Department of Corrections*, 803 F.3d 893 (7th Cir.
   2015)........................................................................... 16, 19

*Board of Trustees, Sheet Metal Workers' National Pension Fund v.
   Four-C-Aire, Inc.*, 929 F.3d 135 (4th Cir. 2019)............................................ 8

*Briscoe v. W.A. Chester, LLC*, 799 F. App'x 183 (4th Cir. 2020)
   (per curiam) ................................................ 5

*BVR Development, LLC v. CalAtlantic Group, Inc.*, No. 18-cv-2039,
   2019 WL 919560 (D. Md. Feb. 25, 2019)................................................... 10

*Caidor v. Onondaga County*, 517 F.3d 601 (2d Cir. 2008)............................ 25

*Cannon v. Peck*, 36 F.4th 547 (4th Cir. 2022)................................................. 4

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)........................... 9

*Chardon v. Fernandez*, 454 U.S. 6 (1981) (per curiam) ................................. 17

*Chesapeake Bay Foundation v. Severstal Sparrows Point, LLC*, 794
   F. Supp. 2d 602 (D. Md. 2011) .................................................. 10

*Crugher v. Prelesnik*, 761 F.3d 610 (6th Cir. 2014)........................................ 23

*Delaware State College v. Ricks*, 449 U.S. 250 (1980).......................... 3, 17–18

*Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882 (4th Cir.
   2023).................................................................................. 5

*Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam) ....................................... 1

*Estelle v. Gamble*, 429 U.S. 97 (1976) ............................................................. 1

*Fernandez v. Clean House, LLC*, 883 F.3d 1296 (10th Cir. 2018) ................... 22

*Fudge v. Penthouse International, Ltd.*, 840 F.2d 1012 (1st Cir. 1988) ............. 9

*Gay v. Wall*, 761 F.2d 175 (4th Cir. 1985) ........................................................ 8

*Goines v. Valley Community Services Board*, 822 F.3d 159 (4th Cir.
   2016)................................................................................... 9

*Goldfarb v. Mayor of Baltimore*, 791 F.3d 500 (4th Cir. 2015) ......................... 8

*Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007) (en banc) ................... 6

*Greater Baltimore Center for Pregnancy Concerns v. Mayor of Baltimore*, 721 F.3d 264 (4th Cir. 2013) (en banc) ....................................... 8

*Green v. Brennan*, 578 U.S. 547 (2016) ..................................................... 15, 18

*Halscott Megaro, P.A. v. McCollum*, 66 F.4th 151 (4th Cir. 2023) ................... 8

*Hasanaj v. Detroit Public Schools Community District*, 35 F.4th 437 (6th Cir. 2022) ......................................................................................... 20

*Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27 (1st Cir. 2003) ................. 20

*Hospodor v. Burlington Industries, Inc.*, 205 F.3d 1333 (table), 2000 WL 203933 (4th Cir. 2000) (per curiam) ..................................................... 18

*Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693 (D. Md. 2013) ................... 10

*Philips v. Pitt County Memorial Hospital*, 572 F.3d 176 (4th Cir. 2009) ......................................................................................................... 8

*Phillips v. LCI International, Inc.*, 190 F.3d 609 (4th Cir. 1999) ...................... 9

*Stegemann v. Gannett Co.*, 970 F.3d 465 (4th Cir. 2020) ................................. 4

*Stevens v. Holler*, 68 F.4th 921 (4th Cir. 2023) ............................................... 5

*United States v. Olano*, 507 U.S. 725 (1993) ................................................. 25

*Waugh Chapel South, LLC v. United Food & Commercial Workers Union Local 27*, 728 F.3d 354 (4th Cir. 2013) ............................................ 6

*Weatherly v. Ford Motor Co.*, 994 F.3d 940 (8th Cir. 2021) .......................... 22

*Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990) .................................................................................................... 1, 24

*West Virginia Coal Workers' Pneumoconiosis Fund v. Bell*, 781 F. App'x 214 (4th Cir. 2019) ......................................................................... 13

*Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315 (2d Cir. 2021) ......................... 23

*Wood v. Crane Co.*, 764 F.3d 316 (4th Cir. 2014) .......................................... 25

*Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899 (7th Cir. 2004) ......................................................................................................... 22

STATUTES

29 U.S.C. § 2617(c)(1) ............................................................ 14–17, 19

29 U.S.C. § 2617(c)(2) ...................................................... 2, 14–17, 19

Family and Medical Leave Act of 1993, Pub. L. No. 103-3, 107 Stat.
    6 (codified as amended at 5 U.S.C. §§ 6381–6387 and 29 U.S.C.
    §§ 2601–2654) ................................................................................ 1

RULES AND REGULATIONS

Fed. R. App. P. 28(j) ........................................................................ 13

Fed. R. Civ. P. 8(c)(1) ........................................................................ 1

Fed. R. Civ. P. 12(b)(6) ....................................................... 1, 4, 8, 11, 22

Fed. R. Civ. P. 12(d) ........................................................................... 1

OTHER AUTHORITIES

*Number of Postal Employees Since 1926*, U.S. Postal Serv.,
    https://about.usps.com/who/profile/history/employees-since-
    1926.htm (last updated Mar. 2023) ............................................. 21

*Oxford English Dictionary* (2d ed. 1989) .......................................... 16

Wright, Charles Alan, et al., *Federal Practice and Procedure* (4th ed.
    2023 update) ................................................................................... 9

## INTRODUCTION

This appeal implicates novel questions about the limitations provisions of the Family and Medical Leave Act of 1993 (FMLA), Pub. L. No. 103-3, 107 Stat. 6 (codified as amended at 5 U.S.C. §§ 6381–6387 and 29 U.S.C. §§ 2601–2654).  But the truth is that those questions should never have arisen.

It is black-letter that affirmative defenses, such as the Postal Service's contention that Mr. Weaver's FMLA claims are time barred, are not usually resolved on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  It is also a bedrock principle of civil litigation that defendants seeking dismissal under Rule 12(b)(6)—for *any* reason—must rely on the allegations in the complaint and may not support their arguments by submitting extrinsic evidence.  Instead, a defendant wishing to assert an affirmative defense must first answer the complaint, *see* Fed. R. Civ. P. 8(c)(1), and a defendant needing extrinsic evidence to make its case must go through the discovery process and await summary judgment, *see* Fed. R. Civ. P. 12(d).

Another foundational principle is that pro se plaintiffs like Mr. Weaver are to be afforded "special judicial solicitude."  *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390 (4th Cir. 1990) (internal quotation marks omitted).  Their pleadings and filings to be "liberally construed."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  And while courts

need not become advocates on behalf of pro se plaintiffs, they must ensure that technical rules are not wielded in a way that makes it overly difficult for laymen, untrained in procedural niceties, to vindicate their rights.

All this was turned on its head below. Rather than show solicitude to Mr. Weaver, the magistrate judge and district court permitted the Postal Service to run roughshod over his rights. The Postal Service was permitted to assert a timeliness defense even though the facts necessary to establish the defense did not appear on the face of the complaint. Then, when Mr. Weaver tried to amend his complaint to add facts confirming that his claims were timely, the Postal Service was permitted to submit extrinsic evidence to negate Mr. Weaver's version of events. Finally, when Mr. Weaver filed objections to the magistrate judge's recommendations, the district court found his pro se filing insufficiently "*specific*" to even warrant a ruling. J.A. 81.

Those procedural flaws warrant reversal on their own, but the legal conclusions supporting the dismissal with prejudice of Mr. Weaver's claims were flawed as well. The magistrate judge concluded—and the district court accepted without scrutiny—that the FMLA's three-year limitations period for willful violations began to run when Mr. Weaver was *notified* of his termination, not when he was *actually* terminated. But Mr. Weaver had three years from the "last event constituting the alleged violation" to bring suit, 29 U.S.C. § 2617(c)(2), and Mr.

Weaver's termination was an "event" in the Postal Service's pattern of violating his FMLA rights. Mr. Weaver filed this suit within three years of his termination, and his claims are therefore timely.

As it did below, the Postal Service insists that its notice rule is dictated by the Supreme Court's decision in *Delaware State College v. Ricks*, 449 U.S. 250 (1980). But *Ricks* arose under a different statute and under different facts. The plaintiff there challenged a discrete decision made by his employer—not, like Mr. Weaver, a pattern of retaliation and interference leading to termination. And the FMLA's limitations provision has uniquely flexible language, further distinguishing *Ricks*.

Nor do the Postal Service's alternative arguments for affirmance have any merit. Mr. Weaver properly alleged a willful violation of the FMLA—the proposed amended complaint sets forth in detail how the Postal Service engaged in a pattern of willfully interfering with Mr. Weaver's FMLA rights and retaliating against him for attempting to exercise those rights. It would be antithetical to the special solicitude owed pro se plaintiffs to harshly enforce forfeiture against Mr. Weaver, as the Postal Service asks this Court to do. And given that Mr. Weaver never had an opportunity to amend, the Postal Service's contention that Mr. Weaver has had sufficient chances to assert his claims must be rejected.

This Court should reverse.

## ARGUMENT

### I. The Proceedings Below Were Procedurally Flawed

The proceedings in the district court did not comply with basic principles of civil litigation. The Postal Service should never have been permitted to submit extrinsic evidence, and Mr. Weaver's proposed amended complaint should have been accepted in light of its clear allegations of timely FMLA claims. The magistrate judge and district court short-circuited the ordinary litigation process by accepting the Postal Service's evidence and treating it as conclusive as to disputed factual matters. And the district court refused even to consider Mr. Weaver's objections to the magistrate judge's procedural and substantive rulings. These errors warrant reversal.

### A. Neither the Initial Complaint Nor the Proposed Amended Complaint Facially Supports the Postal Service's Timeliness Defense

The Postal Service acknowledges (Br. 19) that in determining whether Mr. Weaver should have been permitted to amend his complaint, the ordinary Rule 12(b)(6) standard applies. For where, as here, "a district court denies a motion for leave to amend a complaint on grounds of futility, this Court employs the same standard that would apply in a review of a motion to dismiss." *Stegemann v. Gannett Co.*, 970 F.3d 465, 473 (4th Cir. 2020); *see Cannon v. Peck*, 36 F.4th 547, 575 (4th Cir. 2022) ("[W]here the denial is based on futility grounds, our review is de novo.").

With that principle in mind, it is ultimately irrelevant whether the facts supporting the Postal Service's timeliness defense "clearly appear[ed] on the face of" the *initial* complaint. *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023) (quoting *Briscoe v. W.A. Chester, LLC*, 799 F. App'x 183, 183 (4th Cir. 2020) (per curiam)). The critical question for this Court's purposes is whether the facts necessary to support the statute-of-limitations defense were apparent on the face of the *proposed amended complaint*. Still, Mr. Weaver emphasizes the error in the conclusion that his initial complaint facially supported the Postal Service's defense—as it is demonstrative of the way that ordinary pleading-stage principles were turned against him below.

In support of the dismissal, the Postal Service argues (Br. 20) that despite Mr. Weaver's allegation that his FMLA rights were interfered with "in 3/2015 *and thereafter*," J.A. 9—which could plausibly include interference within the limitations period—other portions of the complaint "mak[e] clear that the final date of the interference was May of 2016," USPS Br. 20. As Mr. Weaver explained in his opening brief (at 26), making such an inference against a plaintiff at the pleading stage—and against a pro se plaintiff, at that—was improper. *See, e.g.*, *Stevens v. Holler*, 68 F.4th 921, 930 (4th Cir. 2023).

But even if the inference were fair with respect to Mr. Weaver's *interference* claim, there was no basis for concluding that the *retaliation* claim facially supported

5

a limitations defense.  The initial complaint associated no dates with the Postal Service's "retaliation for [taking] FMLA leave in 2015." J.A. 9.  So it is impossible to justify the magistrate judge's apparent conclusion that "all facts necessary to the affirmative defense" against Mr. Weaver's retaliation claim "clearly appear on the face of the complaint."  *Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 360 (4th Cir. 2013) (emphasis omitted) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc)).  And for its part, the Postal Service has no response to Mr. Weaver's argument about the retaliation claim in his initial complaint.  *See* USPS Br. 19–20.

The Postal Service does assert (Br. 20) that it is "disingenuous" for Mr. Weaver to argue that his initial complaint alleged timely claims given the proposed amended complaint's allegations that Mr. Weaver was "denied ... FMLA protection" between March 2015 and May 2016, J.A. 36.  But the proposed amended complaint also alleges that the Postal Service interfered with his FMLA rights and retaliated against him for exercising FMLA rights when it fired him on September 23, 2016.  J.A. 36; J.A. 38.  It is difficult to understand how the latter complaint's *explicit* allegations that Mr. Weaver suffered FMLA interference and FMLA retaliation in September 2016 makes it "disingenuous" to argue that the initial complaint properly alleged violations after May 2016.  But in any event, the Postal

6

Service concedes that the proposed amended complaint, by specifically alleging willful FMLA violations in September 2016, was not facially time barred.

## B.    The June 2016 Notification Letter Is Not Integral to the Complaint

Because the proposed amended complaint did not facially support the Postal Service's timeliness defenses, the magistrate judge and district court rejected it only through improper consideration of the Postal Service's evidentiary submissions. Those submissions included a letter purporting to show that Mr. Weaver was notified in June 2016 of his future termination—more than three years before he filed suit.[1] And that letter was the basis for the conclusion below that amendment was futile because any claim Mr. Weaver could assert would be time barred.  J.A. 54–55, 55 n.3; J.A. 76 & n.1.   Consideration of the June 2016 notification letter was impermissible, and Mr. Weaver should therefore have been permitted to amend his complaint.[2]

---

[1] In addition to the June 2016 notification letter, J.A. 47–48, the Postal Service also submitted a "[r]outing [s]lip" signed by Mr. Weaver's wife meant to demonstrate delivery of the letter, J.A. 49, and a notice from Mr. Weaver's union that it was withdrawing the grievance it had filed on his behalf, J.A. 50.

[2] As an additional justification for considering the Postal Service's extrinsic evidence, the magistrate judge offered the fact that Mr. Weaver's "new allegation that would arguably make his claims timely was raised only after [the Postal Service] moved to dismiss his claims as untimely." J.A. 54 n.2.  The Postal Service does not defend this rationale or otherwise contest Mr. Weaver's point that he "had no obligation at all to allege facts showing that his claims were timely, for '[p]laintiffs are not ordinarily required to plead allegations relevant to potential affirmative defenses to an asserted claim.'"  Opening Br. 29 (alteration in original) (emphasis

The Postal Service does not challenge the proposition that generally, in deciding a Rule 12(b)(6) motion—or, as here, determining whether a proposed amended complaint fails for futility—a court's review "is limited to the well-pled facts in the complaint viewed in the light most favorable to the plaintiff." *Halscott Megaro, P.A. v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023). Nor does it contest the general principle that when a court considers material extrinsic to the complaint, it must convert the motion to dismiss to a motion for summary judgment, *see Goldfarb v. Mayor of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015), and give the parties "a reasonable opportunity for discovery," *Greater Balt. Ctr. for Pregnancy Concerns v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (en banc) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)).

Instead, the Postal Service argues (Br. 21–23) that consideration of its evidentiary submissions at the Rule 12(b)(6) stage was proper because those documents were "integral to the complaint," *id.* at 21 (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). But this argument requires stretching the integral-to-the-complaint exception far beyond its proper bounds.

As argued in Mr. Weaver's opening brief (at 30–32), the integral-to-the-complaint exception allows consideration of a document attached to a motion to

---

omitted) (quoting *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 152 (4th Cir. 2019)).

dismiss "if the plaintiff has referred to the item in the complaint and it is central to the affirmative case."   5A Charles Alan Wright et al., *Federal Practice and Procedure* § 1327 (4th ed. 2023 update); *see, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks omitted)).   Thus, a contract can be integral to a complaint asserting a breach-of-contract claim; a written record of a fraudulent statement can be integral to a complaint asserting a fraud claim; and a magazine article can be integral to a complaint asserting a claim that the article is libelous.   *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233–34 (4th Cir. 2004); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 611–13, 618 (4th Cir. 1999); *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1014–15 (1st Cir. 1988).

Mr. Weaver's complaint did not rely (heavily or otherwise) on the June 2016 letter; in fact, it did not mention the letter at all.   And this Court has explained that a district court should not consider documents that are even "*arguably* . . . not integral to the complaint." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (emphasis added).   That should have made it straightforward for the magistrate judge to disregard the letter.

The Postal Service asserts (Br. 22) that the June 2016 notification must be integral to the complaint because "it is the means by which the Postal Service effected the termination," and that "[i]f it had not notified Weaver about his termination, he would not have been terminated and would have continued to work for the Postal Service." But the Postal Service does not respond to the arguments in Mr. Weaver's opening brief (at 30–32) about the narrowness of the exception, and it provides little authority for its bespoke rule that any document playing some but-for role in the causal chain leading to the claim is integral to the complaint. The Postal Service cites only a single, unpublished magistrate-judge decision concerning a notice terminating a contract *sent by the plaintiff*. *See* USPS Br. 22 (citing *BVR Dev., LLC v. CalAtlantic Grp., Inc.*, No. 18-cv-2039, 2019 WL 919560, at *4 (D. Md. Feb. 25, 2019)). Nor does that lone decision provide support for the Postal Service, as the contested document there "was relied upon" and explicitly referenced in the complaint. *BVR Dev.*, 2019 WL 919560, at *4. And the rule applied there was the same one that dooms the Postal Service: "[t]o be integral, a document must be one that by its very existence, *and not the mere information it contains*, gives rise to the legal rights asserted." *Ibid.* (internal quotation marks omitted) (quoting *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 711 (D. Md. 2013)); *see also Chesapeake Bay Found. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (applying same standard).

On the Postal Service's expansive view of the integral-to-the-complaint exception, a massive number of documents are potentially admissible in every case. For instance, in any case related to employment termination, any of the employee's application or onboarding materials would apparently be fair game at the Rule 12(b)(6) stage—after all, if those documents did not exist, there would have been no employment from which to be terminated.  The Postal Service's error is in characterizing the exception as one allowing consideration of extrinsic evidence that plays *any causal role* in the events giving rise to the suit.  That is not the exception, which instead allows consideration only of those documents whose existence is *necessary* to establish the elements of the cause of action.  Whether Mr. Weaver could have been terminated without the June 2016 letter is immaterial, because his cause of action does not rest on the existence of the letter in the way that a libel suit rests on the published defamatory statement or a breach-of-contract suit rests on the written instrument.  *See* Opening Br. 30–32.  If all the facts were the same but the June 2016 letter did not exist, Mr. Weaver would have no less of an FMLA claim.

Indeed, it is telling that the Postal Service has no real response to the Title VII hypothetical in Mr. Weaver's opening brief (at 32).  If the Postal Service were correct, a defendant "could defeat the key allegation of discriminatory purpose—and thus defeat the suit—by attaching to its Rule 12(b)(6) motion a notification of termination that asserts some other reason for the plaintiff's termination." *Ibid.*  The

11

Postal Service shrugs off (Br. 22–23) this hypothetical, noting that in *this* case it "did not cite the termination notice for any of the factual assertions contained in it" and "[t]he document was instead used to establish the date at which Weaver received notice of his termination." This distinction is irrelevant: either the extrinsic evidence may be considered or not. The Postal Service offers neither authority nor logic for its rule that extrinsic evidence may be considered in contesting the timeliness of a claim but not in contesting its merits.[3]

### C.  The District Court Was Required to Rule on Mr. Weaver's Objections

As an independent basis for reversal, Mr. Weaver argued (Opening Br. 36–38) that the district court violated its statutory duty to independently evaluate the aspects of the magistrate judge's recommendation to which he timely filed objections. The Postal Service does not respond to that argument; it merely notes in its recitation of the case's procedural history (Br. 12–13) the district court's reasoning for declining to address Mr. Weaver's objections.

---

[3] The Postal Service apparently lacks the courage of its conviction with respect to whether the June 2016 letter truly is integral to the complaint; if the letter were integral, then everything contained therein should be available for consideration. And the Postal Service's suggestion that its evidentiary submission was permissible only for its date is surprising given the detailed factual recitation in the Postal Service's brief (at 4–6) of Mr. Weaver's purported misdeeds—nearly all of which are drawn from the June 2016 letter and not from the complaint.

For the reasons set forth in Mr. Weaver's opening brief, the district court's failure to address his objections constitutes reversible error. But even if this Court disagreed with Mr. Weaver on that score, "an appellee's wholesale failure to respond to a conspicuous, nonfrivolous argument in the appellant's brief ordinarily constitutes a forfeiture." *W. Va. Coal Workers' Pneumoconiosis Fund v. Bell*, 781 F. App'x 214, 226 (4th Cir. 2019) (opinion of Richardson, J.); *see Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) (explaining that "[t]he Government inexplicably ignored [certain] arguments in its response brief," and "such an outright failure to join in the adversarial process . . . ordinarily result[s] in waiver").[4] Because the Postal Service forfeited the right to respond to Mr. Weaver's argument, a remand is required.

## II. The Statute of Limitations Did Not Begin to Run Before Mr. Weaver's Termination

Even if it were proper to consider the June 2016 notification letter, the content of that letter should not have mattered. Mr. Weaver's proposed amended complaint alleged that he was terminated on September 23, 2016. Though the June 2016 letter noted an earlier projected termination date (in July 2016), the Postal Service

---

[4] In *Alvarez*, this Court declined to impose forfeiture because the argument to which the government failed to respond related to the interpretation of a statute and because the government ultimately addressed the argument in a letter filed under Federal Rule of Appellate Procedure 28(j). *See* 828 F.3d at 295. Neither consideration applies here; nor is there any other basis for forgiving the Postal Service's forfeiture.

acknowledges (Br. 31) that "whether Weaver's final day was on July 5, 2016 or September 23, 2016 was legally irrelevant to the magistrate judge's recommendation and the district court's decision endorsing it."  And the Postal Service does not contend this factual issue must be decided in its favor at this stage.  *See id.* at 32 (referring to Mr. Weaver's termination date as "a legally irrelevant fact").  It instead relies solely (*id.* at 25–29, 31–32) on the proposition that, even if Mr. Weaver was terminated on September 23, 2016, the limitations period began to run in June 2016 when Mr. Weaver was *notified* of his potential termination.

This proposition is wrong.  The time to bring an FMLA suit begins with "last event constituting the alleged violation," 29 U.S.C. § 2617(c)(1)–(2); the "last event" here was when Mr. Weaver was terminated.  Nor, despite the Postal Service's arguments to the contrary, is any other result dictated by *Ricks*.

## A.    The FMLA's Text Resolves This Case

The FMLA's limitations period begins to run with "the last event constituting the alleged violation."  29 U.S.C. § 2617(c)(1) (two-year period generally); *id.* § 2617(c)(2) (three-year period for "willful violation[s]").  No other statute in the U.S. Code uses this "last event" language, and its plain meaning evinces flexibility: "the limitations period for an FMLA violation begins with the last occurrence that is a significant aspect of the basis for the plaintiff's claim."  Opening Br. 39.  When

14

there are multiple relevant occurrences, a plaintiff alleging a willful violation has three years from the *last* occurrence.

The proposed amended complaint alleges that Mr. Weaver was terminated on September 23, 2016. He alleges that his termination was a willful violation of the FMLA because, *inter alia*, it was an act of retaliation against him for attempts to take family leave during his tenure as a Postal Service employee. J.A. 36; J.A. 38– 39. His termination was therefore the "last event constituting the alleged violation," and because Mr. Weaver sued within three years of his termination, his suit was timely. *Cf. Green v. Brennan*, 578 U.S. 547, 555–56 (2016) (explaining that the "standard rule" is that when an employee challenges his discharge, "a limitations period should not begin to run until after the discharge itself").

In response (Br. 26–27), the Postal Service accuses Mr. Weaver of "read[ing] the word 'event' in isolation" and "ignoring the full context of the sentence it is in." *Id.* at 26. It notes that because the FMLA's limitations provisions start the clock at the "date of the last event constituting the alleged violation," 29 U.S.C. § 2617(c)(1)–(2), "[t]he full statutory language" must "exclude[] subsequent events resulting from, but not constituting the violation," USPS Br. 26.

Mr. Weaver, however, is not arguing that any "event" resulting from an FMLA violation—such as an employee who was unlawfully fired later losing his home—restarts the limitations period. Mr. Weaver simply argues the that when an

15

employee alleges that he was fired in retaliation for exercising FMLA rights, the termination itself is an "event constituting the alleged violation," 29 U.S.C. § 2617(c)(1)–(2).  The Postal Service says nothing to contest that point.[5]

What the Postal Service does contest (Br. 26–27) is whether Mr. Weaver's termination was indeed the "*last* event."  The Postal Service asserts (Br. 27) that "[t]he 'final [sic] event' in this context" is "the event which gives the plaintiff the ability to sue."  The Postal Service cites no authority supporting that assertion, and it is not the law.  The FMLA's text refers to the "last event," not the "final event," but the meaning is the same either way: "subsequent to all others in occurrence, existence."  *Last*, *Oxford English Dictionary* (2d ed. 1989) (def. A.I.1.a); *see also Final*, *Oxford English Dictionary*, *supra* (def. A.1.a: "[c]oming at the end").  That language in the FMLA's language does not support a rule that the limitations period irrevocably begins to run at the *first* moment a plaintiff can possibly sue.

It is true, as the Postal Service notes, that as a "definitional[]" matter there can only be only be one "last event."  Br. 27 (citing *Barrett v. Ill. Dep't of Corr.*, 803 F.3d 893, 899 (7th Cir. 2015)).  But it is just as true that the *identity* of the "last

---

[5]  Elsewhere, the Postal Service argues (Br. 24) that Mr. Weaver's termination cannot give rise to an FMLA claim because he failed to allege that it was retaliatory. Contrary to this representation, the proposed amended complaint clearly states that Mr. Weaver "suffered from retaliation by the [Postal Service] . . . when [it] willfully . . . terminated [Mr. Weaver] for FMLA leave that was requested in a timely manner."  J.A. 38.

event" may change with the occurrence of some future event, and that the relevant "last event" depends on what the "alleged violation" is. 29 U.S.C. § 2617(c)(1)–(2). Here, the alleged violation was Mr. Weaver's termination, so even if it is true, as the Postal Service posits (Br. 27), that Mr. Weaver would have had a ripe FMLA claim when he was notified of his future termination, the FMLA's plain text granted him three years to sue from the *actual* termination—a subsequent (and "last") event "constituting the alleged violation." 29 U.S.C. § 2617(c)(1)–(2).

## B.    *Ricks* Does Not Support Dismissal

*Ricks* involved a college professor who alleged that he was denied tenure in violation of Title VII. 449 U.S. at 252–54. He claimed that the statute of limitations began to run not from the date tenure was denied but from the completion of his employment one year later pursuant to a "'terminal' contract to teach one additional year." *Id.* at 253; *see id.* at 255–56. This Court held that the limitations period began to run when tenure was denied because that was when "[t]he only alleged discrimination occurred." *Id.* at 258. The magistrate judge's reliance on *Ricks* was misplaced; unlike the plaintiff in *Ricks*, Mr. Weaver *is* alleging that the termination of his employment was unlawful. *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (per curiam) (applying *Ricks* because "[t]here were no other allegations, either in *Ricks* or in these cases, of illegal acts subsequent to the date on which the decisions to terminate were made"); Opening Br. 42–45. As explained in Mr. Weaver's

opening brief (at 47), the reason his termination was effected on September 23, 2016, was because of collusion between the Postal Service and Mr. Weaver's union.

The Postal Service continues (Br. 25–29) to rely on *Ricks*, but it does not take on Mr. Weaver's arguments. The Postal Service first asserts that *Ricks* held that the limitations period for retaliation cases "occurs when the adverse employment decision is 'made and communicated.'" *Id.* at 25 (quoting *Ricks*, 449 U.S. at 258). That was not the holding of *Ricks*, which instead focused on the allegations in the complaint there and the language of the relevant statute's limitations provision. *See Green*, 578 U.S. at 561–62 ("[T]he 'inevitable consequence' principle of *Ricks* . . . does not change the focus of the limitations period, which remains on the claim of discrimination itself.").[6]

The Postal Service attempts (Br. 28–29) to equate this case to *Ricks* by observing that the June 2016 letter "does not instruct Weaver to attend a hearing or other procedure" and instead "represents the Postal Service's decision to terminate Weaver's employment." This is immaterial. Even assuming the Postal Service's *decision* to terminate Mr. Weaver was not "tentative," *id.* at 29, Mr. Weaver is not

---

[6] The Postal Service cites (Br. 25 n.4) the unpublished decision of this Court in *Hospodor v. Burlington Industries, Inc.*, 205 F.3d 1333 (table), 2000 WL 203933 (4th Cir. 2000) (per curiam), which held that "[i]n a case involving alleged unlawful termination, the time for filing [administrative] charges accrues when the employee receives notice of his termination, not when the termination occurs." *Id.* at *1. *Hospodor* is not an FMLA case and involves statutes with differently worded limitations provisions. *See ibid.* In any event, it is not binding precedent.

challenging the decision to terminate him; he is challenging his *actual* termination, which occurred on September 23, 2016. J.A. 36; J.A. 38–39. The plaintiff in *Ricks* was challenging the *decision* to deny him tenure; that is why the statute of limitations began to run once that decision was finalized and he was notified of it. Moreover, the termination date in the June 2016 notification letter (July 5, 2016), *see* J.A. 47, was not the same as the one listed on Mr. Weaver's evidentiary submissions (September 23, 2016), *see* J.A. 87, 93, so it cannot be conclusively determined at the pleading stage that there was indeed nothing "tentative" about the June 2016 notice. And the Postal Service does not attempt to explain how, when an employee alleges unlawful termination, the termination itself is not an "event constituting the alleged violation." 29 U.S.C. § 2617(c)(1)–(2).[7]

---

[7] The Postal Service repeatedly invokes (Br. 25–28) the Seventh Circuit's decision in *Barrett*, 803 F.3d 893, but that case is not directly relevant here. The question in *Barrett* was whether, when a plaintiff is terminated due to unexcused absences that she believes should have been protected under the FMLA, the limitations period begins when leave is denied or when the plaintiff is terminated. True, Mr. Weaver also alleges that he was improperly denied leave, J.A. 36; J.A. 38, but the more pressing issue here is whether, when a plaintiff claims that his termination was retaliatory, the limitations period begins to run when he is notified of the termination. Mr. Weaver disagrees with *Barrett* and maintains that his denial-of-leave claims are timely as well, but resolution of that question is not necessary to reverse the judgment below.

## III.   The Postal Service's Alternative Arguments for Affirmance Lack Merit

The Postal Service offers several alternative grounds for affirmance, but none has merit. And each would be particularly inapt as a basis for affirming the dismissal of a pro se plaintiff's complaint.

1.   First, the Postal Service argues (Br. 23–25) that Mr. Weaver's proposed amended complaint did not properly allege a *willful* violation. That is incorrect.

A willful violation occurs when an employer knowingly violates the FMLA or acts in reckless disregard of an employee's rights under the statute. *See, e.g.*, *Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*, 35 F.4th 437, 455 (6th Cir. 2022); *Hillstrom v. Best W. TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003). Mr. Weaver's factual allegations plausibly support a willful violation; the proposed amended complaint has far more than a mere "catch all allegation that all the Postal Service's actions were willful," USPS Br. 24 n.2. Mr. Weaver alleges a sustained pattern of repeated violations of his FMLA rights that could only be the product of willfulness. J.A. 36; J.A. 38–39. For instance, Mr. Weaver alleges that the Postal Service "willfully . . . denied [him] FMLA protection . . . after the birth of his child," J.A. 36, and that it "retaliat[ed]" against him by "disciplin[ing] [him] for requesting and taking FMLA leave," J.A. 38. It beggars belief that by flatly denying FMLA leave after the birth of a child and by retaliating against him for attempting to take leave,

the Postal Service—a federal agency with over a half-million employees[8] and a
wealth of experience with the FMLA—did not know it was violating federal law.
And Mr. Weaver also alleges that the Postal Service took a number of actions to
manipulate his hours, including inputting his time incorrectly so as to reduce his
leave eligibility under the FMLA.  J.A. 38–39.  Mr. Weaver alleges that violation
was willful, too, and it is hard to imagine how such a violation could be anything *but*
willful.  Given the wealth of plausible allegations of willful conduct by the Postal
Service, the allegation that Mr. Weaver's termination was *also* a willful violation of
the FMLA easily clears the plausibility threshold.

The Postal Service argues (Br. 23–24) that because the proposed amended
complaint states that Mr. Weaver had received "four letters of warning" between
2014 and 2016, J.A. 38–39, Mr. Weaver's allegations that his termination was a
willful act of interference and retaliation must be disregarded.  But the proposed
amended complaint does not acknowledge that the letters of warning were
themselves legitimate.  This argument thus requires inferences to be drawn against
Mr. Weaver, the pro se plaintiff, and it therefore fails.

In any event, Mr. Weaver was not obligated to include allegations establishing
the timeliness of his complaint, as plaintiffs need not plead around affirmative

---

[8] *See Number of Postal Employees Since 1926*, U.S. Postal Serv.,
https://about.usps.com/who/profile/history/employees-since-1926.htm (last updated
Mar. 2023).

defenses. *See* Opening Br. 29–30. So it would be irrelevant, even if it were true, that Mr. Weaver "did not allege that his termination itself . . . represented willful discrimination," USPS Br. 24. Whether the violations were willful is relevant only for purposes of the Postal Service's limitations defense, and it is the Postal Service that has the obligation to demonstrate that Mr. Weaver's claims are untimely.

Applying that principle, the Eighth Circuit in *Weatherly v. Ford Motor Co.*, 994 F.3d 940 (8th Cir. 2021), held that it did not matter for purposes of the defendant's limitations defense if the plaintiff's complaint failed to plausibly allege that an FMLA violation was willful. *Id.* at 942. As the court explained, "FMLA claims . . . do not depend on whether a defendant acted willfully because a defendant's willfulness is not an element of the claim." *Ibid.*; *see also Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298–99 (10th Cir. 2018) (applying the same logic to a claim under the Fair Labor Standards Act of 1938, which also has a two-tiered limitations provision); *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901–02 (7th Cir. 2004) (Easterbrook, J.) (similar in an antitrust case because "[o]nly when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)"). The Postal Service is free to assert its timeliness defense after the parties have taken discovery, but Mr. Weaver has no burden to overcome it at the pleading stage. *See Weatherly*, 994 F.3d at 944 ("If at summary

22

judgment [plaintiff] cannot muster sufficient evidence to permit a reasonable factfinder to find that [defendant] acted willfully, then the district court can side with [defendant] on its limitations defense.").[9]

And finally, even if the Postal Service were correct that Mr. Weaver was required, and failed, to allege a willful violation, that would be no basis for affirming the dismissal of his complaint *with prejudice*. Mr. Weaver was not permitted to amend his complaint solely because the magistrate judge believed that Mr. Weaver's claims were necessarily untimely and amendment was therefore futile. J.A. 55 n.3. But if the problem with Mr. Weaver's proposed amended complaint was that it insufficiently alleged *willfulness*, there would be no basis for dismissing with prejudice: Mr. Weaver could amend further to allege willfulness in more detail. As explained in his opening brief (at 47–48), Mr. Weaver requests the opportunity to explain in his complaint how the end of his employment on September 23, 2016, was a retaliatory act of collusion between the Postal Service and his union.

2.    The Postal Service also argues (Br. 29–30) that it was a permissible exercise of discretion not to permit amendment because "[a]t the time the district court held that further amendment would be futile," Mr. Weaver "had attempted to amend his complaint multiple times, and had never advanced a claim that was not

---

[9] Mr. Weaver acknowledges, and respectfully disagrees with, other circuits' conclusions to the contrary. *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320–22 (2d Cir. 2021); *Crugher v. Prelesnik*, 761 F.3d 610, 617 (6th Cir. 2014).

time-barred." *Id.* at 30.  And therefore, in the Postal Service's view, Mr. Weaver should not be given an opportunity to add allegations that would indisputably make his claims timely.

The version of history in which Mr. Weaver had already attempted to amend multiple times is the one where his mistaken effort to amend by submitting supplemental allegations, rather than submitting an entirely new complaint, is counted against Mr. Weaver. *See* Opening Br. 7–8.  The "special judicial solicitude" owed pro se plaintiffs, however, *Weller*, 901 F.2d at 390 (internal quotation marks omitted), does not countenance that they be punished in this way for their minor misunderstandings of procedural rules.  In truth, Mr. Weaver never had a chance to amend after learning why his initial attempt to assert his claims was unsuccessful. The only reason the lower court refused him that chance is because of its erroneous view that amendment was futile.  The Postal Service's efforts to justify that refusal on other grounds should be rejected.

3.    As for Mr. Weaver's argument that the magistrate judge should not have considered the Postal Service's evidentiary submissions to support its timeliness defense, the Postal Service argues (Br. 21) that Mr. Weaver "waived" the issue by not objecting to the document's submission below.  The Postal Service suggests (*ibid.*) that Mr. Weaver ought to have "claim[ed] that his termination notice was not

integral to the case . . . either in an opposition to the Postal Service's motion—which he did not file—or in his objections to the magistrate judge's recommendation."

Even if it were true that Mr. Weaver had the opportunity, but failed, to contest whether the document could be considered, at most he would have *forfeited* the issue, not *waived* it. *See Wood v. Crane Co.*, 764 F.3d 316, 326 n.9 (4th Cir. 2014) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993))). And forfeiture here would be far too harsh a result to impose on a pro se litigant. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("We recognize that the right to appear *pro se* should not be impaired by harsh application of technical rules, and therefore we make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." (internal quotation marks omitted)).

It is also wrong that Mr. Weaver did not file an opposition to the Postal Service's motion to dismiss. He did. J.A. 30–31. Perhaps the Postal Service means that Mr. Weaver should have filed a *reply* responding to the Postal Service's opposition to his motion for leave to amend, the filing to which the Postal Service attached the June 2016 notification letter. J.A. 40–45. But as Mr. Weaver explained in his objections briefing, he "was not aware a response could be made in opposition

to a defendant's response in opposition to a motion to amend that had yet to be decided by the Court," and he therefore "did not attempt such a response."  J.A. 57. He noted that he was—and, as a pro se plaintiff, understandably so—"confused as to the legal process."  J.A. 57.

## CONCLUSION

For the foregoing reasons and those stated in Mr. Weaver's opening brief, the judgment of the district court should be reversed and the case remanded.


Respectfully submitted,

Date:  October 13, 2023

/s/ Michelle S. Kallen
Michelle S. Kallen
    Counsel of Record
Jonathan J. Marshall*
JENNER & BLOCK LLP
1099 New York Ave., N.W.,
    Suite 900
Washington, DC 20001
(202) 639-6000
mkallen@jenner.com
jmarshall@jenner.com

*Court-Appointed Counsel for Plaintiff-Appellant Stanford Lance Weaver*

\* *Admission in the District of Columbia pending; practicing under direct supervision of members of the D.C. Bar*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limit set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains **6,488** words.

I further certify that this brief complies with the typeface requirements set forth in Federal Rule of Appellate Procedure 32(a)(5)(A) and with the type-style requirements set forth in Federal Rule of Appellate Procedure 32(a)(6).

Date:  October 13, 2023

*/s/ Michelle S. Kallen*
Michelle S. Kallen
JENNER & BLOCK LLP
1099 New York Ave., N.W.,
    Suite 900
Washington, DC 20001
(202) 639-6000
mkallen@jenner.com

*Court-Appointed Counsel for
Plaintiff-Appellant Stanford Lance
Weaver*